Jonathan Pearce, Cal Bar. No. 245,776
jpearce@socalip.com
Michael D. Harris, Cal. Bar No. 59,470
mharris@socalip.com
Brian S. Tamsut, Cal. Bar No. 322,780
btamsut@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Defendant The Ridge Wallet LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Mosaic Brands, Inc., <br><br> Plaintiff, <br><br> v. <br><br> The Ridge Wallet LLC, <br><br> Defendant. | No. 2:20-cv-04556-AB-JC <br><br> Memorandum of Points and Authorities in Support of Defendant Ridge's Motion to Dismiss the Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) <br><br> Date:    October 30, 2020 <br> Time:    10:00 a.m. <br> Judge:  Birotte |

## TABLE OF CONTENTS

A.  Introduction ............................................................................................. 1

B.  Background ............................................................................................... 1

C.  Arguments ................................................................................................ 2

   1.  Fed. R. Civ. P. 8 requires a claim for relief to have sufficient non-conclusory factual content. .............................................................. 2

   2.  Mosaic's Exhibit C demonstrates Ridge's non-infringement, because the accused wallet has no "lips" or their claimed details .................. 3

      a.  Ridge's elastic band does not "extend around three edges of said first panel along said interior surfaces." ........................................... 6

      b.  Mosaic does not plead "said second panel adapted to be attached to said first panel along said three edges to form an open-ended enclosure." ..... 8

c.     Mosaic does not plausibly plead *two* lips of varying thickness. ............... 8

d.     Mosaic does not plead at all a *second* set of lips having all the same characteristics. ....................................................................... 10

e.     Mosaic repeatedly recites language that appears to invoke the doctrine of equivalents, but Mosaic may not rely upon the doctrine of equivalents to eliminate claim limitations ....................................................... 11

f.     Mosaic fails to plead induced or willful infringement. ........................... 12

3.     The FAC's trade dress claims also should be dismissed. .............................. 13

a.     Mosaic again fails to define its trade dress and that prevents Mosaic from claiming trade dress infringement. ................................................. 13

b.     The SAC alleges non-functionality, but the allegations are irrelevant until Mosaic identifies its trade dress. .................................................... 17

c.     Assuming the elements Mosaic identifies form a part of its trade dress, all remain functional. ............................................................... 17

d.     Mosaic's alleged sales do not equal secondary meaning. ....................... 21

e.     The SAC fails to allege the required "Mosaic is the first to acquire secondary meaning in the trade dress." .................................................. 22

f.     Without even alleging "look for" advertising, the SAC does not allege facts to support secondary meaning. ....................................................... 23

g.     The FAC's likelihood of confusion allegation is conclusory with no supporting facts. ........................................................................ 24

h.     The FAC's failure to name the infringing products supports dismissal. 24

4.     The dismissal should be with prejudice because the SAC is a third attempt at a complaint, and Mosaic ignored the Court's dismissal order. ....................................................................................... 24

D.   Conclusion ...................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81
(2d Cir. 1984)................................................................................21

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121
(Fed. Cir. 2018)...............................................................................5

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307 (Fed. Cir. 2007)...........12

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)....................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................3, 13, 18, 21

*Asyst Techs. V. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005)..................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................1, 3

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) ......................23

*Brooks v. Agate Res*., Inc., No. 6:15-CV-00983-MK, 2019 WL 2635594
(D. Or. Mar. 25, 2019) ................................................................18

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) ........13

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987) ...................23

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350
(Fed. Cir. 2005)................................................................................3

*Georgia-P. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723
(7th Cir. 2011)................................................................................20

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950) ...................11

*Halicki Films, LLC v. Sanderson Sales, Mktg.*, 547 F.3d 1213
(9th Cir. 2008)................................................................................22

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)........................................3

*KP Perm. Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) ...........24

*L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419 (2nd Cir. 2011) ..........................18

Memo. of Points and Auth. in Support of
Motion to Dismiss FAC      iii      Mosaic Brands v. The Ridge Wallet
2:20-cv-04556-AB-JC

*Landrum v. Knockout Sports World*, No. 10-CV-5703-DMG (OPx), 2011 WL 13217523 (C.D. Cal. Mar. 25, 2011)........................................................22

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997)....................................................................................13

*Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230 (C.D. Cal. 2014) ........................15

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985)....................1, 22

*Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996) ...........................................5

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009).............................2, 7, 13, 21

*Natl. Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009)....................................................................................16

*Pagliero v. Wallace China Co.*, 198 F.2d 339 (9th Cir. 1952)..................................20

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..............................................4

*Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995)..................................20

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902 (9th Cir. 1995)........................................................................23

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217 (9th Cir. 1996)......................22

*Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817 (Fed. Cir. 1999)....................................................................................11

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .............................................................3

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ....................................................1

*Traffix Devices v. Mktg. Displays*, 532 U.S. 23 (2001)..................................17, 20, 23

*Troy Healthcare, LLC v. Nutraceutical Corp.*, C11-844-RSM, 2011 WL 13127843 (W.D. Wash. June 6, 2011)........................................................................22

*Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL 2047553 (N.D. Cal. May 2, 2018) ............................................................................4

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) .........................21

*Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205 (2000).....................................13, 18

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)...................12

*Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101 (2nd Cir. 2001) ...............................16

**Other Authorities**

1 T.J. McCarthy, *McCarthy on Trademarks and Unfair Competition*
§ 8:3 (5th ed.).......................................................................................................13

**Rules**

Fed. R. Civ. P. 8...........................................................................................................2

Fed. R. Civ. 12 ...............................................................................................1, 4, 25

**Statutes**

15 U.S.C. § 1125(a)(3)................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   INTRODUCTION

The patent claim in the Second Amended Complaint's (SAC) cannot state a claim on which relief may be granted because Mosaic's '616 patent[1] and its chart, Exhibit C, shows Ridge does not infringe. Its accused wallet lacks several required features of the claimed "lips."

The trade dress claim is implausible under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring a complaint to "state a claim to relief that is plausible on its face"). The SAC makes no clear identification of its alleged trade dress. Either it is six wallets in Ex. D, or it is only the Smart Money Clip II. SAC ¶ 35-36. Further, the trade dress "includes" some "for example" "non-functional" features, but Plaintiff fails to unequivocally identify the trade features. Even after the Court's admonition to "clearly state" whether it means all six wallets or only the Smart Money Clip II, and to clearly identify the elements making up its trade dress, ECF 38 at 11, Mosaic declined. Because the trade dress remains undefined, and plaintiff alleges it requires discovery to define the trade dress, it is implausible that it could have acquired the necessary secondary meaning, "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Aside from asserting one Mosaic product "has become distinctive," SAC ¶ 36, the SAC alleges no facts that could lead to acquiring secondary meaning.

### B.   BACKGROUND

One Ridge wallet, shown on the right, stores credit cards inside the front and rear, flat plates. See SAC Exhibit C.[2] An elastic band on three



---

[1] Patent No. 7,334,616, Exhibit A to the SAC.

[2] A court may consider exhibits to the complaint when ruling on a Rule 12(b)(6) motion. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

sides urge the plates together against credit cards. A spring along the outside of one plate holds currency.

Plaintiff Mosaic claims to be the exclusive licensee of the '616 patent," "Card-Holding and Money Clip Device." SAC. ¶ 8. Exhibit A to the SAC is a copy of the patent, and the figure to the right is FIG. 1 of the patent.



The first claim for relief alleges Ridge infringes the '616 patent. The SAC quotes verbatim from claim 1 of the patent, SAC ¶ 10. The next several paragraphs compare some claim limitations to Ridge's wallet. SAC ¶ 12–27. Mosaic's claim chart, SAC Ex. C. purports to compare Claim 1 with Ridge's wallet.

Plaintiff's second claim alleges trade dress infringement, that Mosaic "created numerous original designs and products that have proven to be very popular with consumers." The SAC identifies six products in Ex. C and points to one of them, the Smart Money Clip II. SAC ¶ 35. Next, the SAC points to several "for example" of one wallet's features it alleges are non-functional but makes no clear statement the list identifies its trade dress. SAC ¶ 36.

## C. ARGUMENTS

### 1. FED. R. CIV. P. 8 requires a claim for relief to have sufficient non-conclusory factual content.

"[T]o survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." A complaint offering "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be presumed true, allegations in a FAC "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court accepts only the complaint's plausible, factual allegations as true. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Dismissing groundless claims is important with patent and other intellectual property claims because even groundless claims can be so expensive that it forces up the "in terrorem increment of the settlement value." *Twombly*, 550 U.S. at 557–58 (citation and internal quotation marks omitted). If the patent claim proceeds, the parties may need to go through claim construction leading to a Markman hearing followed by summary judgment or trial.[3] The trade dress claim also could require extensive discovery and surveys on secondary meaning. Mosaic's inability to even allege plausible claims for patent and trade dress infringement should excuse Ridge from exerting itself defending these claims.

## 2. Mosaic's Exhibit C demonstrates Ridge's non-infringement because the accused wallet has no "lips" or their claimed details.

"[A]n accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). SAC Exhibit C, which includes images of Ridge's accused wallet, ignores, obfuscates, and glosses over claim elements.

---

[3] Ridge believes this motion proves non-infringement, invalidity remains a potential issue. Proving invalidity requires prior art searching and potential experts opining on obviousness and other issues.

Demonstrating Ridge's non-infringement is proper for Rule 12(b)(6) motions. *See Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 WL 2047553, at *1 (N.D. Cal. May 2, 2018), where Apple moved to dismiss by arguing non-infringement based on Uniloc's claim chart, which was an exhibit to the complaint. The court agreed with that approach but denied the motion finding the claim chart adequate.

The SAC asserts infringement only of claim 1. The SAC may have added to the FAC's allegations, walking through elements of claim 1 in more detail. But this detail continues to demonstrate that Ridge's wallet cannot infringe.

Claim 1, the only claim the SAC asserts, begins "A holder for securely and simultaneously retaining flexible articles and rigid cards." At least these four elements are missing from Ridge's accused wallet:

(b)[4] a lip extending nominally around three edges of said first panel along said interior surfaces;

(e) a lip extending nominally around three edges of said second panel along said interior surface and configured to form a mirror image of said first panel,

(f) said second panel adapted to be attached to said first panel along said three edges to form an open-ended enclosure … ; and

(j) wherein said first panel and said second panel each has lips of varying thickness.

Claims "must be read in view of the specification …." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). But "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." *Id.* at 1323. The interpretation of patent claims is a pure issue of law, suitable for

---

[4] For ease of reference, this motion will retain the numbering applied by the Plaintiff. Unfortunately, Exhibit C does not rely upon the same numbering scheme.

determination by the Court. *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 391 (1996). For claim construction at the Rule 12(b)(6) stage, the court "must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed …, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). But Mosaic does not propose claim constructions other than claiming Ridge's elastic band is a lip. Ridge submits the Court can reject that construction, but even if the band could be a lip, the claim language prevents the band from meeting other limitations of the plural lips.

There is a considerable difference between the patent's wallet and Ridge's accused wallet in the '616 patent itself. Patent Figures 3 and 4 (below) show lip 30 and mating lip 32 and how they extend from panels 20 and 22 ("right angles to the plane"



FIG. 3          FIG. 4

of each panel) to create "an enclosure" between the panels for holding cards.

The associated text states:

> FIG. 3 illustrates, in perspective, the interior of the first panel 20 having a lip 30 which extends along three sides at right angles from the plane of panel 20 (nominally about 0.125 inch) forming a cavity. Lip 30 consists par[t]ially[5] of three continuous and nominally straight sections: two longitudinal elements 34a and 36a, and a lateral element 38a. Lip 30

---

[5] Quote typographical error corrected.

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC          5          Mosaic Brands. v. The Ridge Wallet
2:20-cv-04556-AB-JC

1
2

is bounded by a "U" shaped mating surface 40a around the periphery of panel 20.

3
4

FAC Ex. A, 3:28–34.[6] The text explaining Figure 4, which describes second panel 22 and lip 32, is like the description of Figure 3. *Id.*, 3:35–40.

5
6
7
8

The patent describes "varying thickness" of the last quoted element as, "[L]ips 30 and 32 hav[e] varying thickness defining the outer dimension of enclosure 10." 4:64–66. Figures 3 and 4 show the lips' varying thickness because their outer walls are curved, but the inner walls are straight.

9
10
11
12

Figure 13 is a flow chart for the process for assembling the patent' wallet. The final step states, "Bonding the first and second panels together at the lips to form a holder with an interior enclosure between the interior surfaces of the two panels and an exterior retaining member at the exterior of the first panel."

13
14
15
16
17
18

The lips at least must: (1) "extend … along the interior surface," (2) "extend … around three edges of said first panel," (3) provide "an open-ended interior enclosure" between the first and second (i.e. top and bottom) panels 20 and 22 attached at those three edges of each for receiving cards, (4) be "of varying thickness," and (5) each characteristic of those lips are required for *two* sets of independent lips extending from each of the first and second panels. Ridge's wallet has none of these traits.

19
20

### a.     Ridge's elastic band does not "extend around three edges of said first panel along said interior surfaces."

21
22
23
24
25

Ridge's accused wallet has no lips. Ridge's wallet interior surface is flat. Nothing "extends … along [its] interior surfaces" as required by 10(b). It has an elastic strap on three sides of the wallet.[7]




Lip at 90° Angle

26
27

---

[6] Col. 3, lines 28–34.

28

[7] The Plaintiff improperly left this labelled as 9(b), when it should be 10(b) since it is from paragraph 10 of the SAC.

The image to the right is from SAC Exhibit C. The elastic strap, which Mosaic asserts are "lips," do not "extend … along the interior surface" of either panel, as required by the claim. Instead, they wrap around the exterior. Mosaic acknowledges that the Ridge wallet "has both an interior and an exterior surface." SAC at ¶ 13. But Mosaic argues elastic bands "attach to and extend along the interior surface of the first and second panel." SAC at ¶ 14. This assertion is implausible. The elastic bands do not attach at any point to the first panel, and they do not "extend … along said interior surfaces" of that first panel. Mosaic's position obfuscates the claim's express requirement for *two, independent* lips, ones extending from the first panel and the separate one extending from second panels. Ridge has neither.

Element 10(b) includes another requirement. The lip must "extend[] … around three edges of said first panel." Mosaic claims it is "certainly plausible that" Ridge's wallet has this limitation. SAC at ¶ 14. Mosaic then describes Ridge's elastic bands using language from the clause for the first lip, element 10(b). The mirrored language offers improper "labels and conclusions" where "a formulaic recitation of the elements of a cause of action" which "will not do." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). For element 10(b), Mosaic concludes, "These elastic bands literally create the 'lips' which performed the claimed function …." an elastic band "creates" nothing; it is just an elastic band. Even if considered lips, Ridge's elastic band does not "extend around three edges of said first panel." It covers only a small portion each edge.

Mosaic obfuscates further asserting "These elastic bands extend … and are right angles to the plane of the second panel." Ex. C (ECF 39-3) p. 4. And "*[t]hey* are mirrored to the attachment points of the first panel." *Id* at 4 (emphasis added). "They" in this sentence refers to "these elastic bands," but it conflates the attachment points, which are not a limitation in the claim, with "lips." The presence or absence of attachment points is irrelevant. Even if it were relevant, the images in Mosaic's claim

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                                7                    Mosaic Brands. v. The Ridge Wallet
                                                                          2:20-cv-04556-AB-JC

chart shows the elastic band is not attached to the plates. The presence or absence of separate lips on both panels is a claim requirement, but the SAC and claim chart does not identify lips on the second panel. As Mosaic recognizes, the Ridge wallet lacks a mirrored elastic band.; There is only one band. The claim chart also fails to show the elastic band "extend[s] from the interior surface of this *second panel*." Instead, Mosaic states, "[T]he elastic bands are perpendicular and *adjacent with*[8] the inner surface." *Id.* at 2, 4. The claim does not require adjacency. It requires both lips "extend from" and be a part of their respective panels. Mosaic's SAC and Ex. C do not plead that the Ridge wallet meets the claim limitations of elements 10(b) or 10(e).

> **b.**    **Mosaic does not plead "said second panel adapted to be attached to said first panel along said three edges to form an open-ended enclosure."**

The elastic strap holds what Mosaic calls Ridge's first and second panels together. The two panels are free of one another and are not attached. Unlike the '616 patent's lips which attach and separate the first and second panels to receive cards so they may "store said rigid cards" once they are "attached" to one another, Ridge's elastic bands hold both the plates, and the cards together. The Ridge wallet is, therefore, open. There is no enclosure, and there is no attachment.

> **c.**    **Mosaic does not plead two lips of varying thickness plausibly.**

What Mosaic calls Ridge's lips, its elastic band, is likewise not of varying thickness as required by element 10(j). In Exhibit 6 to Mosaic's first preliminary injunction motion (ECF 18-7 at 5, right) and its FAC (Ex. C), it provided its first claim chart, calling the different lengths



---

[8] All emphasis of claim language in this brief is added.

of the elastic band a "varying thickness."

Later, in its Reply brief supporting its Renewed Motion for Preliminary Injunction, Mosaic changed theories, arguing that "the thickness of an elastic band also changes as more cards are inserted into the wal-




No. 32-4 at 6-7.   The thickness of an elastic band also changes as more cards are inserted into the wallet, and the rubber and latex cords are stretched thin.

let, the rubber and latex cords are stretched thin." (ECF 35 at 4, right). Mosaic suggests that physical transformation through human interaction was the required "varying in thickness."

Now, with its third attempt at asserting this limitation, and after the Court agreed that the "length" of the elastic bands identified in the FAC was not plausibly a "thickness" (ECF 38 at 8), Mosaic counters with a third theory. SAC at ¶ 26.

Mosaic now claims elastic bands "vary in thickness throughout the band." SAC at ¶ 26. It now points to fibers in the elastic cloth "varying in thickness." If one were to use a microscope to inspect any object, virtually every surface would have minute differences simply by operation of physics. The '616 patent's lips have varying thickness because their outer walls are curved, and the inner walls are straight. *See* Pat. Fig. 3. The thickness of Ridge's elastic band does not meet the varying in thickness requirement for the lips.



Varying thickness throughout the band.



FIG. 3

### d.    Mosaic does not plead a second set of lips having all the same characteristics.

Mosaic tacitly admits Ridge's product has no second lip. The SAC does not allege a second lip exists in the Ridge wallet. Instead, Mosaic repeatedly discusses the "lips" in SAC ¶ 14 with reference claim element 10(b) to Ridge's elastic band without differentiating between a first and second lip. Referring to element 10(e) in ¶ 19, Mosaic again points to the same elastic band, while failing to admit it is pointing to the same elastic band to satisfy this requirement for the *second* lip. Even the language used in paragraphs 10(b) and 10(e) of the SAC for two distinct claim elements is almost identical. Pointing to the same elastic band in its claim chart (Ex. C at 3 and 4) with multiple arrows is improper. Compare the two images:



Mosaic points to the same elastic band twice, but simply asserts that when the Ridge wallet is flipped, one elastic band becomes "two" lips. This is improper.

The claims first lip must "extend[] nominally around three edges of said first panel along said interior surfaces." Separately, the claim also requires "a lip extending nominally around three edges of said second panel along said interior surface and configured to form a mirror image of said first panel." This is the second panel's lip. Using the "mirror image" language demands two distinct lips, one for each panel that mirror one another. An elastic band cannot mirror itself.

The claim also requires, "[S]aid first panel *and said second panel each* has lips of varying thickness." Two, independent lips, each having independent characteristics of (1) extending … around three edges of the first [or second] panel, (2) extending …

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                                    10                Mosaic Brands. v. The Ridge Wallet
                                                                                                    2:20-cv-04556-AB-JC

along said interior surface [of the first or second panel] and *each* (3) having a varying thickness, are required. They also must meet and attach, as mirror images of one another, to form an enclosure. Mosaic identifies only one elastic band and calls it  the two required lips.

e. **Mosaic repeatedly recites language that sounds like it invokes the doctrine of equivalents, but Mosaic may not rely upon the doctrine of equivalents to eliminate claim limitations.**

Plaintiff appears to recognize that the Ridge wallet does not include two lips. In response, Mosaic repeatedly relies on language such as "functionally identical and equivalent to lips" (SAC ¶¶ 16, 21, 27). This language, which calls to mind the doctrine of equivalents fails to confirm Mosaic invokes the doctrine of equivalents.[9] The doctrine of equivalents may provide patent coverage for unamended claims to the extent an accused device "performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

Even if doctrine of equivalents could apply, the claims requires two lips. The doctrine does not allow elimination of claim limitations. *Asyst Techs. V. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation."). In *Asyst*, plaintiff asks the court to construe an "unmounted" system as meeting a limitation requiring that it be "mounted." The SAC is similar. Ridge's wallet does not include two lips, but the SAC alleges Ridge's one elastic band is equivalent to, functions the same way, and has the same result as the patent's two lips. SAC ¶¶ 16, 21, 27. Mosaic

---

[9]Plaintiff added "wherein said first panel and said second panel each has lips of varying thickness" in prosecution of the '616 patent, which forecloses reliance upon the doctrine of equivalents. *See Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 827 (Fed. Cir. 1999) (holding that when a limitation is added in prosecution, the doctrine of equivalents cannot apply to that limitation).

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                              11                    Mosaic Brands. v. The Ridge Wallet
                                                                                    2:20-cv-04556-AB-JC

eliminates the claim's express limitation requiring two lips. Doing so also affects other claim limitations where two lips appear, e.g., 10(b), 10(e), and 10(j).

Mosaic's call to eliminate multiple limitations also implicates the "specific exclusion" principle of the doctrine of equivalents, namely that by expressly and repeatedly referring to two lips, the patent excludes embodiments having only one. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."). Mosaic's claim chart eliminating at least two, potentially three, elements 10(b), 10(e) and 10(j). Each individual claim element must find its counterpart in the alleged equivalent structure.

Mosaic failed to plausibly plead infringement because of these significant differences between claim 1 and Ridge's wallets.

### f.    Mosaic fails to plead induced or willful infringement.

The previous analysis dealt with direct infringement but Mosaic also pled and induced infringement. SAC ¶ 28-30. Among other factors, induced infringement requires a third-party's direct infringement. *See ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007). Since the SAC does not plead direct infringement adequately, Ridge's customers cannot directly infringe, so all other inducement factors become irrelevant.

All of Mosaic's allegations are bald legal conclusions couched as fact. For example, "customers who buy and use The Ridge Wallet are direct infringers, who are induced to infringe by Defendant's marketing and sales activities engaged in with the specific intent to induce infringement." SAC ¶ 28. Mosaic alleges inducement, and specific intent with no factual basis. The remaining paragraphs recite the legal elements of induced infringement or willful infringement, but include no facts. SAC ¶¶ 29-31. "[A] formulaic recitation of the elements of a cause of action will not do."

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                                      12                     Mosaic Brands. v. The Ridge Wallet
                                                                                                           2:20-cv-04556-AB-JC

*Moss*, 572 F.3d at 969. Mosaic's legal conclusions couched as facts are "not entitled to the presumption of truth." *Iqbal*, 555 U.S. at 681.

### 3.   The FAC's trade dress claims also should be dismissed.

Trade dress infringement requires evidence (1) "its claimed dress is nonfunctional," (2) it "serves a source-identifying role," and (3) defendant's product "creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001).[10]

### a.   Mosaic still fails to define its trade dress.

Mosaic refused to make a clear and unequivocal statement like the kind Mosaic's trade dress is the following list of elements. The SAC had to plead more than it has trade dress or even it includes certain elements. It must "articulat[e] the specific elements which comprise its distinct dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). "[T]he discrete elements which make up that combination must be separated out and clearly identified in a list. All courts agree that the elements of the alleged trade dress must be clearly listed and described." 1 T.J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed.).

The September 3, 2020, order, ECF 38, p. 11, said, "Mosaic's brief obfuscates whether the trade dress attendant to any product other than the Storus Smart Money Clip II is asserted in this action." The Court directed Mosaic to identify clearly whether the claimed trade dress "pertain to the trade dress of all of Mosaic's 'original products and designs'" or "solely in its Storus Smart Money Clip II trade dress" and directed Mosaic to "clearly state so."

Mosaic reiterated its mistake in the SAC, which continues to point to the six designs in its Exhibit D:

---

[10] *Clicks* held inherent distinctiveness could fulfill the source-identifying role, but the case predates *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 212 (2000) (inherent distinctiveness irrelevant for a product design).



Mosaic's language is nearly identical to that in the FAC, stating its "numerous original designs and products … *including* its Smart Money Clip II ('SMCII') … depicted in Exhibit D." SAC at ¶ 35 (emphasis added)[11]. The next paragraph refers to "the appearance of the SMCII" as distinctive, but Mosaic never actually indicates that the trade dress is or is only evident in the Smart Money Clip II. SAC at ¶ 36. Inexplicably, the Mosaic continues to include and refer to all six wallets in Exhibit D. The SAC carefully avoids limiting the trade dress to any product(s) or to any set of features for one or more products.

The remaining allegations only confuse Mosaics alleged trade dress still more. After refusing to expressly limit the trade dress to a single product or multiple products in Ex. D, the remainder of paragraph 36 continues, "*For example*, many design aspects of the SMCII product are non-functional, *including*, its rounded edges, its pronounced, off center half-circle notch, its seven visible rivets along the border, its 'beer glass'-shaped money clip with a raised end, and its carbon fiber exterior look— all shown in Exhibit D." SAC at ¶ 36 (emphasis added). Here, Mosaic's continued insistence on the phrases "for example" and "including" remain open-ended language,

---

[11] Plaintiff changed the words "including the" to "including its Smart Money Clip II."

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                    14                    Mosaic Brands. v. The Ridge Wallet
                                                                2:20-cv-04556-AB-JC

identical to that the Court properly found indefinite, and suitable for dismissal, in the FAC. This is again directly contrary to the Courts admonition to "identify the concrete elements of the trade dress sought to be asserted." ECF 38 at 11 (citing *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014). "Identifying the trade dress with particularity is important given the general rule that 'generic product designs are unprotectable even upon showing of a secondary meaning.'"). Confusingly, even the list does not actually state these "for example" elements make up the alleged trade dress, but instead asserts that these elements "are non-functional." SAC ¶ 36.

Remaining paragraphs of the SAC continue to plead some of these elements are non-functional, but none define the trade dress or articulate its elements in any way that might be called "concrete" or as "a particularized combination of all of these elements." SAC ¶ 37-39; *Id.* at 1241. This is improper.

*Lepton Labs* is illuminating. There, the plaintiff identified ten elements, individually and collectively, that defined its trade dress. The elements were a closed list; it did not claim merely to include them, and the ten elements were specific (e.g., element c was "a light blue and orange color schematic."). *Id.* at 1240-41. With those specifics, the court denied the defendant's motion to dismiss.

SAC paragraph ¶ 39 states, "These many non-functional design aspects of the SMCII product, including taken together and as a total product image, are distinctive and have secondary meaning …." Yet, to what does "these" refer? The only identification is the trade dress is six wallets in Exhibit D, but Mosaic uses "includes" the Smart Money Clip II, and "includes" "for example" five features. However, even this language fails to state the trade dress is this list of elements, instead it states that these elements, which may or may not be its trade dress, are "distinctive and have secondary meaning." Mosaic has again not identified its trade dress.

Mosaic's inability to reference a single exhibit showing a single product or group of products and listing every element that makes up that trade dress again merits dismissal. Mosaic cannot have it both ways. It cannot plead its trade dress is six products, but mostly one product, its trade dress includes these elements, but may include others, and its trade dress for example is five things but may include other things. During the meet and confer, Mosaic claimed it needed discovery to determine what its trade dress is. If Mosaic has a protected trade dress, its existence is independent of Ridge. Forcing Ridge to bear the costs of discovery to enable Mosaic to "figure out" what its own trade dress entails is improper. What Mosaic defines as its trade dress is or is not protectable, but documents and information from Ridge do not alter what Mosaic defined trade dress is.

The court in *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101 (2nd Cir. 2001) required plaintiff to define its trade dress because "a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectible style, theme or idea." *Id.* at 117. Without a definition, a court cannot "shape narrowly-tailored relief. *Id.* (citation and internal quotation marks omitted).

Mosaic cannot argue the images of SAC Exhibit D define its trade dress. *See Natl. Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 562 (S.D.N.Y. 2009) (dismissing trade dress claims with prejudice for lacking a definition and the "claim is not rescued by the mere attachment of brochures, photographs and specifications to the Amended Complaint."). Here, the multiple images are even less helpful because they are so different from one another. They define no uniform trade dress. In such a situation, the need for a closed, itemized list of elements is a necessity.

The stark differences among the six designs negate a coherent definition of a trade dress. Mosaic's insistence upon showing six wallet designs, its open-ended language such as "including" and "for example" both as to any particular product or products and to any set of features for the product or products, are far too general a level to define any trade dress. Mosaic's refusal to articulate its trade dress as directed by the Court merits dismissal with prejudice.

Mosaic may argue in reply it has defined its trade dress, and attempt to clarify its trade dress in its briefing. But the Court noted, the complaint is the proper place for pleadings, not a reply brief. ECF 38, p. 9, n 2.

**b.  The SAC alleges non-functionality, but the allegations are irrelevant until Mosaic identifies its trade dress.**

The SAC spends three paragraphs (¶ 37-39) variously alleging non-functionality regarding rounded edges, the number and location of rivets, the "beer glass" shape, and carbon fiber material. These allegations contrast with the dearth of allegations in the FAC, but they are pointless unless Mosaic specifically alleges *what* its trade dress entails. One can argue many elements of any product lack functionality, but unless those elements define the Mosaic's trade dress, any lack of functionality is irrelevant.

**c.  Assuming the elements Mosaic identifies form a part of its trade dress, all remain functional.**

Products are particularly difficult to protect with trade dress protection because a "feature is also functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 33 (2001).

The fact that product design almost invariably serves purposes other than source identification not only renders inherent distinctiveness problematic; it also renders application of an inherent-distinctiveness

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                    17          Mosaic Brands. v. The Ridge Wallet
2:20-cv-04556-AB-JC

> principle more harmful to other consumer interests. Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness.

*Samara Bros.,* 529 U.S. at 213.

> In the case of product design … consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing.

*Id.*

Mosaic has the burden of proving non-functionality. "In a civil action for trade dress infringement …, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). At the pleading stage, Mosaic must allege plausible facts supporting the shapes, dimensions and other elements are not functional. The SAC alleges that several components are non-functional. Many of those allegations are implausible. "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 430 (2nd Cir. 2011) (citing *Iqbal*, 556 U.S. at 670). The Court is limited to the SAC and exhibits, but the Court "need not check its common sense at the door." *Brooks v. Agate Res*., Inc., No. 6:15-CV-00983-MK, 2019 WL 2635594, *30 (D. Or. Mar. 25, 2019) (citing *Iqbal*, 556 U.S. at 679).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The SAC picks some features but fails to allege facts showing plausibly that the features are not functional. The SAC alleges its wallet's rounded edges "yield no utilitarian advantage." SAC ¶ 37. Any wallet wearer knows rounded edges are functional because they enable wallets to be put into and taken out of any pocket more easily. Mosaic alleges that the "off center half-circle notch has no utilitarian advantage." *Id.* No. A notch as a half-circle provides a comfortable receptacle for a rounded finger so cards may be pushed out of the wallet. A cutout is needed to push the cards out from between the plates. Off-center placement is necessary to avoid the wallet's elastic bands.

The SAC alleges placing the seven rivets[12] provide no utilitarian advantage over other placements. SAC ¶ 37. The most-useful place to join any two flat surfaces is at the four corners to avoid the two surfaces separating. The best placement of the elastic band is centered alone the two plates. Otherwise, cards would be pushed out of the side opposite the not-centered elastic band. Any side with an elastic band by necessity must have its rivets or screws offset from that band to accommodate it. So, the long side having the elastic band needs two off-set screws to accommodate the elastic band on that side. That leaves the placement of a single screw on the other long side. Since no elastic band is present on that side, centering a single rivet is the choice because it provides sufficient strength to bind the two plates to form the wallet. Using over seven screws or rivets at increased manufacturing cost and with no benefit on strength, durability or resilience makes no sense.

Mosaic next claims that the "beer glass" shape for the money clip has no utilitarian purpose, pointing to its tapered shape at its end and its outward bent end. SAC at ¶ 37. All money clips use similar shapes for utilitarian purposes. This is because a narrower end or tapered end at one end of the clip enables a user to insert or remove folded bills more easily. The taper also reduces the tension at its end, while

---

[12] The Ridge wallet uses screws, not rivets.

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                    19                    Mosaic Brands. v. The Ridge Wallet
                                                               2:20-cv-04556-AB-JC

maintaining tension near its attachment point. The clip is bent outward for similar reasons—to enable a finger or folded bill to get under the clip to remove or insert money.

Mosaic's patent infringement chart stresses this function, stating, "[T]his member is also biased and bent toward the exterior of the panel so it can securely hold currency underneath the clip." Ex. C at 5.

Finally, Mosaic alleges using carbon fiber serves no utilitarian purpose. SAC ¶ 38. In the next sentence, Mosaic asserts, "[Carbon fiber] is frequently used on aircraft and sports cars for its light weight and durability," but then argues that light weight and durability are nonfunctional for wallets. Mosaic's website advertising belies the reality. It states its wallet is "Slim + Ultra Light." Ex. D, p. 5 The lightness of the Mosaic's carbon fiber wallet is functional. The wallet is slim because carbon fiber is strong for its weight and thickness.

Mosaic claims using carbon fiber it is purely aesthetic. SAC at ¶ 38. However, even aesthetic elements are unprotectable as trade dress if the element serves a "significant non-trademark function" such as being lighter and more durable when applied to a product. *See. Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 170 (1995) (dry-cleaning pads' color served functional, non-trademark purpose by avoiding visible stains). *See also Pagliero v. Wallace China Co.*, 198 F.2d 339, 343–44 (9th Cir. 1952) (holding aesthetic design on china plates was a functional feature of the china. Though Mosaic does not specifically argue that the way its carbon fiber looks is its trade dress, it would be irrelevant under *Qualitex* and *Pagliero*.

Mosaic claims the '616 patent covers Ridge's wallets, but "[a] utility patent is strong evidence that the features therein claimed are functional." *Traffix*, 532 U.S. at 29. The patent in *Traffix* had expired, but Mosaic's unexpired patent also provides strong functionality evidence. *See Georgia-P. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 728 (7th Cir. 2011) (holding non-expired patents are

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                    20            Mosaic Brands. v. The Ridge Wallet
2:20-cv-04556-AB-JC

"strong evidence of functionality"). Mosaic does not plead (and cannot later prove) non-functionality for these elements.

### d. Mosaic's alleged sales do not equal secondary meaning.

To allege secondary meaning, the Mosaic must plead facts alleging that (1) actual purchasers associate the trade dress with the producer; (2) the degree and manner of the trade dress owner's use of the trade dress; and (3) whether the trade dress owner's use of the trade dress has been exclusive. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989). The SAC alleges secondary meaning based upon Mosaic's wallets' alleged exclusive sales and advertising to many "thousands of customers." While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." A complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). That is precisely what the Mosaic does here. Mosaic recites that its "design aspects" are (1) exclusive, (2) have been "significantly" advertised, and (3) has "thousands" of sales. SAC at ¶ 39. No underlying facts support these allegations. Such claims are "not entitled to the presumption of truth." *Iqbal*, 555 U.S. at 681. Even if they are true, no assertion about the "degree and manner" of the alleged use, or even a bald assertion that "actual purchasers associate the trade dress with [Plaintiff]" are present.

These allegations remain unsupported argument that Mosaic's products are popular. "Popularity of a product is not synonymous with secondary meaning. Large sales of the product may be due to dozens of factors, only one of which may be the drawing power of the trademark." *McCarthy* § 15:47 (5th ed.). *See also 20th Century Wear, Inc. v. Sanmark-Stardust Inc.*, 747 F.2d 81, 90 n.9 (2d Cir. 1984) ("Proof of a product's popularity should not be equated with proof of secondary meaning.").

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                          21                          Mosaic Brands. v. The Ridge Wallet
                                                                                              2:20-cv-04556-AB-JC

What's worse, Mosaic makes only a conclusory claim regarding alleged advertising spend, merely asserting that the money is "significant[]."

The evidence Mosaic needs to prove secondary meaning are customer surveys, direct customer testimony, an exclusive and long-term use of the trade dress, the amount and manner of the advertising, the sales and numbers of customers, and evidence demonstrating an established place in the market (e.g. that the consuming public sees the alleged trade dress and immediately thinks of Mosaic). *See, e.g. Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985). Mosaic's bald assertions, even at the pleading stage, need allegations of substantive, plausible facts.

### e. The SAC fails to allege the required "Mosaic is the first to acquire secondary meaning in the trade dress."

Only a trademark owner can sue for infringement. *Halicki Films, LLC v. Sanderson Sales, Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008). The same rule applies to trade dress. *Troy Healthcare, LLC v. Nutraceutical Corp.*, C11-844-RSM, 2011 WL 13127843, at *5–6 (W.D. Wash. June 6, 2011). Acquiring ownership in its trade dress required Mosaic to "have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir. 1996). *See also McCarthy* § 16:18 (earlier edition cited in *Sengoku*). Mosaic alleges no time when it began using the trade dress or any time when it alleges that its secondary meaning was established. Mosaic does not actually claim to own any alleged trade dress.

Here, Mosaic also has failed to plead the required ownership of the trade dress. *Landrum v. Knockout Sports World*, No. 10-CV-5703-DMG (OPx), 2011 WL 13217523, at *1 (C.D. Cal. Mar. 25, 2011). Exhibit D, which the SAC claims to picture Mosaic's products, appear to be sold by an entity called "Storus," not Mosaic. The SAC fails to explain how Mosaic acquired any trade dress rights from Storus or its relationship with Storus.

Memo. of Points and Auth. in Support of
Motion to Dismiss SAC                    22                    Mosaic Brands. v. The Ridge Wallet
                                                              2:20-cv-04556-AB-JC

Mosaic must also allege, and eventually prove, secondary meaning for its product design trade dress. *Traffix*, 532 U.S. at 28, and Mosaic must acquire secondary meaning before Ridge first used the alleged trade dress. Secondary meaning requires relevant consumers understand the trade dress refers to Mosaic. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992) ("A claim of trade dress infringement fails if secondary meaning did not exist before the infringement began."); *accord Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912–14 (9th Cir. 1995).

The FAC fails to allege when Mosaic first sold a wallet, what wallet it sold then, or, more important, when its alleged trade dress acquired secondary meaning. Mosaic must plead when its alleged trade dress acquired secondary meaning and that the date must be before defendant Ridge sold its accused wallet.

### f.   Without even alleging "look for" advertising, the SAC does not allege facts to support secondary meaning.

Mosaic must allege that it engages in extensive "look for" advertising for each or those designs to plead secondary meaning properly.

Since the burden is on the company that argues that a particular feature or designation is its exclusive trademark or trade dress property, it is incumbent on that company to prove that an otherwise unremarkable feature has achieved the status of a source indicator. "Look for" advertising is the best way to accomplish this.

McCarthy § 7:30 (5th ed.). Plaintiff in *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir. 1987), claimed trade dress rights in yellow jugs for Prestone antifreeze. The court rejected any trade dress due in part to failure to stress color and shape of jug in advertising. "It did not, for example, urge consumers to look for the 'familiar yellow jug.'" *Id*. at 1383. SAC Exhibit D, which shows Mosaic's ads do

nothing to inform the public any designs are source identifiers. But they only stress the wallet's function.

### g.   The FAC's likelihood of confusion allegation is conclusory with no supporting facts.

The FAC only alleges, "Certain of the products sold by Defendant—including The Ridge Wallet product in Exhibit B—are likely to cause confusion." SAC ¶ 40. The SAC mentions no supporting facts that could support likelihood of confusion. It mentions no likelihood of confusion factor, such as those from *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). But the SAC must identify at least relevant factors and plead facts supporting those factors to meet its burden of pleading infringement adequately. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

### h.   The SAC's failure to name the infringing products supports dismissal.

The SAC identifies no Ridge infringing products. It identifies, "Certain of the products sold by Defendant—including The Ridge Wallet product shown in Exhibit B" as infringing, SAC ¶ 40, but "including" makes identifying a single product meaningless. Ridge sells many wallets.

### 4.   The dismissal should be with prejudice because the SAC is a third attempt, and Mosaic ignored the previous dismissal order.

Mosaic must have made its best effort with the patent infringement allegations. Despite that, they remain implausible given express requirements of the patent claims and the showing here that Ridge does not infringe. A fourth amended complaint cannot alter the '616 patent and will yield no better allegations.

Mosaic chose to avoid couching its trade dress claim as the law requires and as the Court directed. Amendment is futile because Mosaic has no trade dress and still

cannot define it. Rewarding Mosaic with still another attempt at what it should have done from the start is improper.

## D.   CONCLUSION

Mosaic's claims fail to allege claims on which relief can be granted. FED. R. CIV. P. 12(b)(6). The SAC's patent claim fails to explain how defendant directly and indirectly infringes the '616 patent. For the trade dress claim, the Mosaic has affirmatively avoided defining the alleged trade dress, does not plausibly allege non-functionality, and alleges no facts supporting acquired secondary meaning, when such meaning may have applied, and how Mosaic came to acquire the alleged trade dress.

Every dismissal without prejudice requires Ridge to respond to yet-another preliminary injunction motion, and file yet another motion to dismiss, on Mosaic's implausible infringement claims. Ridge requests that the Court grant the motion and dismiss the SAC with prejudice.


October 1, 2020                                    /s/ *Jonathan Pearce*
                                                   Jonathan Pearce
                                                   SoCal IP Law Group LLP

                                                   Attorneys for Defendant The Ridge
                                                   Wallet LLC