Jonathan Pearce, Cal Bar. No. 245,776
jpearce@socalip.com
Michael D. Harris, Cal. Bar No. 59,470
mharris@socalip.com
Brian S. Tamsut, Cal. Bar No. 322,780
btamsut@socalip.com
SOCAL IP LAW GROUP LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

Attorneys for Defendant and Counterclaimant The
Ridge Wallet LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| Mosaic Brands, Inc.,<br><br>        Plaintiff,<br><br>                v.<br><br>The Ridge Wallet LLC,<br><br>        Defendant.<br><br>And Related Counterclaim | No. 2:20-cv-04556-AB-JC<br><br>Memorandum of Points and Authorities Supporting Defendant's Summary Judgment Motion<br><br>Date:   Friday, April 23, 2021<br>Time:   10:00 a.m.<br>Judge:  Birotte |

**TABLE OF CONTENTS**

A.  Introduction ........................................................................................1

B.  Summary Judgment Legal Standards ..................................................3

C.  Relevant Background Regarding the Two Wallets ..............................4

D.  Argument ............................................................................................4

    1.  Mosaic has no evidence supporting secondary meaning. .................4

        a.  Mosaic's lack of oral or documentary evidence regarding
            sales or advertisement prevents it establishing secondary
            meaning. .....................................................................................5

        b.  Similar third-party wallets prevent Mosaic from acquiring
            secondary meaning because use was non-exclusive. ....................6

c.  Mosaic's other wallets preclude a finding that the public identifies Mosaic when it sees its Clip II. ................................... 7

d.  Any claim that Ridge copied is refuted by the evidence. ......................... 8

e.  Mosaic's sales beginning in 2019 are irrelevant for secondary meaning six years after Ridge began selling its wallet. ................................................................................ 10

f.  Mosaic's claimed advertising is inadequate to raise an issue of fact and insufficient for secondary meaning. ..................................... 10

g.  If Mosaic ever had trade dress rights, it abandoned them. .................... 12

h.  Mosaic has no pre-2013 evidence of secondary meaning. .................... 12

i.  Mosaic's statements refute it could have acquired secondary meaning. ................................................................................ 13

2.  Laches bars the trade dress claims because Mosaic waited seven years to sue, three years beyond the statute of limitations. ............................ 14

3.  Mosaic cannot meet its burden to prove any trade dress is not functional because utilitarian advantage stems the claimed trade dress. ................................................................................ 16

E.  Conclusion ................................................................................ 21

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................... 3

*Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983 (Fed. Cir. 2015) ........................... 17

*Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138 (9th Cir. 2009) .............. 10

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) ......... 2, 10, 12

*Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794 (9th Cir. 1970) .. 2, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................... 2, 3

Memo. of Points and Authorities for
Sum. Judg. Motion                          ii          Mosaic Brands, Inc. v. The Ridge Wallet LLC
                                                        2:20-cv-04556-AB-JC

*Chandon Champagne Corp. v. San Marino*, 335 F.2d 531 (2d Cir.1964) ............. 14

*Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789 (7th Cir. 2002) ..................... 14

*Craft Smith, LLC v. EC Design LLC* 969 F.3d 1092 (10th Cir. 2020) ................... 9

*E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) ................................. 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............... 3

*Exigent Tech. v. Atrana Sols., Inc.*, 442 F.3d 1301 (Fed. Cir. 2006) ...................... 3

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143 (9th
   Cir. 1999) ....................................................................................................... 5

*First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378
   (9th Cir. 1987) ......................................................................................... 2,17

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088 (9th Cir. 2004) ......... 14

*Internet Specialties W., Inc. v. Milon-Digiorgio Enters.*, 559 F.3d 985 (9th
   Cir. 2009)...................................................................................................... 15

*Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866 (9th Cir. 2002) ............. 1, 5, 9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ......... 14

*Johnston v. Standard Mining Co.*, 148 U.S. 360 (1893) ........................................ 14

*L.A. Printex Indus. V. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2011) ................... 8

*Larsen v. Vizio, Inc.*, SACV-14-1865-CJC, 2017 WL 3084273 (C.D. Cal. June
   26, 2017) ........................................................................................................ 11

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) .................. 4, 6

*Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975 (9th Cir. 2006) .......... 14, 15

*Plumley v. Mockett*, 836 F. Supp. 2d 1053 (C.D. Cal. 2010) ................................... 3

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677 (9th Cir. 2012) ........ 20

*Talking Rain Bev. Co. Inc. v. S. Beach Bev. Co.*, 349 F.3d 601
   (9th Cir. 2003) ......................................................................................... 16, 20

*Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002) ...................... 16, 20

Memo. of Points and Authorities for
Sum. Judg. Motion

iii

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

*Tillamook Cty. Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102 (9th Cir. 2006) ........................................................................ 14

*Tolan v. Cotton*, 572 U.S. 650 (2014) ...................................................... 3

*Traffix Devices v. Mktg. Displays*, 532 U.S. 23 (2001) ............................ 1, 4, 16, 20

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81 (2d Cir. 1984) ..................................................................................................... 5

*Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205 (2000) ..................... 9, 16

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925 (9th Cir. 2005) ................................................................................................... 6

**Statutes**

15 U.S.C. § 1125 ................................................................................. 16, 17

15 U.S.C. § 1127 ....................................................................................... 12

**Rules**

FED. R. CIV. P. 56 ....................................................................................... 3

FED. R. CIV. P. 30 ................................................................................. 7, 11

Memo. of Points and Authorities for
Sum. Judg. Motion

iv

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## A.   INTRODUCTION

3

Mosaic's trade dress claim rests on a vacuum of evidence. Mosaic has no evi-

4

dence of any sales of any wallet embodying its purported trade dress between mid-

5

2011 and 2019. None. It has no contemporaneous images or advertisements of what it

6

claims to be its trade dress. It produced no web page anywhere on the web during that

7

time that shows that product. From mid-2011 to 2019, Mosaic does not even have

8

summaries of spending on advertisements or sales volume. Ridge's own search of the

9

Internet from 2011 until 2019 shows Mosaic neither advertised not offered wallets for

10

sale with its claimed trade dress. Mosaic's CEO, the only person who might know,

11

does not know how many products Mosaic sold or how much it spent on advertising.

12

Worse, Mosaic shredded all documents that might have shown sales or advertising in

13

2013 and 2016. Mosaic, therefore, claims to own a trade dress in a design it appar-

14

ently did not sell or advertise for nearly a decade.

15

Mosaic provided evidence of only 378 sales of *some* product in 2011, but it has

16

no contemporaneous images or any contemporaneous advertising of the product.

17

Even assuming the 2011 product was the product Mosaic claims as its trade dress, its

18

limited sales of that insignificant amount cannot support the secondary meaning nec-

19

essary to support a trade dress claim because they demonstrate no "mental recogni-

20

tion in buyers" that the trade dress is associated with Mosaic. *Japan Telecom v. Japan*

21

*Telecom Am.,* 287 F.3d 866, 873 (9th Cir. 2002).

22

Secondary meaning is necessary to protect trade dress for a product design.

23

*Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 28 (2001). Mosaic has no evidence it

24

created the necessary "mental recognition in buyers' and potential buyers' minds that

25

products connected with the [mark] are associated with the same source." *Japan Tele-*

26

*com v. Japan Telecom Am.,* 287 F.3d 866, 873 (9th Cir. 2002). No evidence shows

27

28

how its advertising affected consumer perception since it provided no advertising-related evidence at all.

Mosaic needs to show secondary meaning at the time Ridge first sold its accused wallet in 2013. *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 800 (9th Cir. 1970) (affirming trial court holding recent survey not competent to show secondary meaning when alleged infringement began); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826 (Fed. Cir. 1992). Mosaic offers no evidence of secondary meaning before or after 2013.

Mosaic argued repeatedly the similarity of parties' wallets is evidence of copying which may support secondary meaning. Mosaic has provided a single invoice from one manufacturer as evidence it created its wallet in 2010. For all of 2012 to 2018, one manufacturer made all Ridge wallets. No Mosaic evidence ties Ridge's manufacturer to any manufacturer Mosaic used. Ridge could not have copied a product that was not available for purchase or even advertised.

Functional trade dress like Mosaic's cannot be protected, 15 U.S.C. § 1125(a)(3). Proving non-functionality is Mosaic's burden, *id.*, but no Mosaic evidence refutes functionality. Mosaic's own patent and advertisements and common sense confirm the claimed features of the trade dress are functional. Past and recent advertising focus on the wallet's functions.

Ridge should win this motion not because it has shown that Mosaic is wrong. Ridge should win this motion because Mosaic has provided no evidence to support multiple elements Mosaic needs for its claim to succeed. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Mosaic's claim should fail as a result.

## B.   SUMMARY JUDGMENT LEGAL STANDARDS

Moving party Ridge must show "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Ridge bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Ridge may satisfy the burden by showing or pointing out "an absence of evidence to support the nonmoving party's case." *Id.* Once Ridge meets its initial burden, Mosaic must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Any Mosaic opposition must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Evidence of the nonmovant is to be believed, however, and justifiable inferences must be drawn in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

For Ridge, the party charged with infringement, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Exigent Tech. v. Atrana Sols., Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1066 (C.D. Cal. 2010) (moving party "need only give notice to the party with the burden of proof that it must come forward with all of its evidence.").

This motion shows Mosaic's lack of necessary evidence, but it also shows contrary evidence Mosaic cannot counter.

Memo. of Points and Authorities for
Sum. Judg. Motion

3

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

1

## C.  RELEVANT BACKGROUND REGARDING THE TWO WALLETS

Two photographs of Ridge's wallet (Kane Decl. Exs. 1 (assembled) and 2 (exploded)[1] are at the



right. The wallet's longer side is about 2.3 inches, the shorter side is about 1.5 inches, and the wallet is about 0.25 inches thick when holding no cards. Kane Decl. ¶ 5.



A Mosaic STORUS brand Smart Money Clip II ("Clip II"), an exhibit to the third amended complaint (ECF 66-2; Ex. B here) is pictured to the right. Mosaic claims these features are its trade dress: (a) rounded edges, (b) pronounced, off center, half-circle notch, (c) seven visible rivets along the border, (d) "beer glass"-shaped money clip with a raised end, and (e) carbon fiber exterior look. Exs. A, B and C (ECF 66, ¶ 35 and 66-2, 66-3).

## D.  ARGUMENT

### 1.  Mosaic has no evidence supporting secondary meaning.

Mosaic must raise a material issue of fact that its trade dress acquired secondary meaning. *Traffix*, 532 U.S. at 28. (holding secondary meaning is necessary to protect trade dress for product designs). Establishing secondary meaning requires evidence of "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). *See also Japan Tele-*

---

[1] Ridge's CEO Daniel Kane's declaration ("Kane Decl.") authenticates all numbered exhibits, while the declaration of Jonathan Pearce ("Pearce Decl.") authenticates all exhibits identified by letters.

*com v. Japan Telecom Am.,* 287 F.3d 866, 873 (9th Cir. 2002). "[P]roof of secondary meaning entails vigorous evidentiary requirements." *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 90 (2d Cir. 1984). Mosaic falls far short and can establish no such mental recognition.

A trade dress owner can establish secondary meaning with direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) citing J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed. 1997). The ultimate question is whether the claimed trade dress has "become distinctive of the trade[dress owners] … goods in commerce." *Japan Telecom*, 287 F.3d at 873. Of these exemplary ways secondary meaning can be established, Mosaic offers no direct consumer testimony, no survey evidence, and offers no sales or advertisement evidence. The remaining options are exclusivity of use of the trade dress and intentional copying. Ridge will address each.

### a. Mosaic's lack of oral or documentary evidence of sales or advertisement prevents it from establishing secondary meaning.

Mosaic has no business records of annual sales figures, annual advertising and expenses, and its CEO does not know those numbers. Pearce Decl. ¶ 6; Ex. D (M. Kaminski, Nov. 17, 2020 Deposition) at 73:23-74:19. Responding to questions to Mia Kaminski, Mosaic's CEO, asking how many Clip II wallets Mosaic sold each year from 2012 to 2019, answered "I can't remember" or "I don't know." And when asked, "Is there anywhere that would have that information," she answered, "There would be probably nothing before 2016, and if there is anything between '16 and now, we would have handed it to you." Ex. D, 73:23–74:19. Mosaic produced no sales documents for 2012-2019. Pearce Decl. ¶ 6. Its only sales documents begin in

late 2019, many years after Ridge first sold its wallet. Kane Decl. ¶ 22-24; Exs. 6 and 7. Ms. Kaminski also did not know how much Mosaic spent advertising the Clip II each year from 2011 through 2019. Ex. D, 82:17–83:23. Mosaic has no documents because it shredded all its documents in 2013 and again in 2016, *Id.* 73:10-18.

The only documentary evidence Mosaic produced of its Clip II wallets is four, 2011 invoices for fewer than 400 wallets from golf courses in the Southeast United States. Ex. E. But between 2012 and late 2019, Mosaic has (1) no documentary evidence of sales, (2) no advertisement expenditures during that period (3) no physical location or web-based location where any Clip II product was available for purchase and (4) no contemporaneous photographs showing what the Clip II looked like and identifies (5) no retailers selling the Clip II. Pearce Decl. ¶ 6, 9.

    **b.**    **Similar third-party wallets prevent Mosaic from acquiring secondary meaning because use was non-exclusive.**

Secondary meaning requires exclusivity of use. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (exclusivity is one factor for secondary meaning). "When several other sellers use the same non-inherently distinctive designation, that third-party use undermines the claim that the relevant public perceives this designation as identifying only one source in the marketplace." *McCarthy* § 15:27. *See also Levi Strauss*, 778 F.2d at 1358 (holding exclusivity is a factor to establish secondary meaning). And "[w]here a design is relatively prosaic or ordinary, the applicant has a heavy burden in establishing that the design of a product has acquired distinctiveness (secondary meaning)." *McCarthy* § 8:8.50 (5th ed.) (citation and quotation marks omitted). Without exclusive use, consumers cannot develop any understanding of Mosaic as the source of products that "look like" its product. Many identical products "undermine the claim that the relevant public perceives this designation as identifying only one source in the marketplace." *McCarthy,* § 15:27 (5th ed.).

Memo. of Points and Authorities for
Sum. Judg. Motion

6

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

Ridge introduced its accused wallet in 2013. Kane Decl. ¶ 22. The seven years of concurrent use (2013–2020) destroys any exclusivity Mosaic may have had. Even worse for Mosaic, many companies sell similar products at retail. Pearce Decl. Ex. F (note the 20 products on pages 2 and 4). Ms. Kaminski also admitted there are "many others out there with [the trade dress] characteristics" and admitted "there's hundreds of factories making it [the Clip II]." Ex. D, 97:10-22; Ex. G (M. Kaminski February 5, 2021 30(b)(6) deposition) 83:20-84:4. Ms. Kaminski also admitted that numerous wallets for sale are "identical." Ex. D, 100:15-114:7 (Ms. Kaminski agreeing that 18 other products then available on the Amazon.com website were each an "exact copy" or "identical' with Mosaic's wallet embodying the trade dress); Ex. H (exhibits 1009-1027 to that deposition, referenced in the associated transcript portion above).

### c.   Mosaic's other wallets preclude a finding that the public identifies Mosaic when it sees its Clip II.

The original complaint states, "Through many years of consistent, creative effort, Plaintiff has created numerous original designs and products that have proven to be very popular with consumers and successful at retail in the United States, including the designs and products depicted in Exhibit D." Ex. I (ECF 1, ¶ 24). Pages 40 – 46 in that exhibit show five other Mosaic wallets. A recent Mosaic advertisement showed 16 different STORUS brand wallets. Ex. J.

Those other Mosaic wallets make proving secondary meaning even more difficult, probably impossible, without evidence the public distinguishes the Clip II from other Mosaic wallets to identify Mosaic/STORUS as the source. To defeat summary judgment, Mosaic must introduce pre-2013 evidence when Ridge first sold its wallet, that the public treated the Clip II differently from other STORUS wallets. Mosaic produced none. Mosaic has no evidence of pre-2013 advertisements. But it also has no evidence informing the public the Clip II identified Mosaic/Storus while the other wallets did not.

1

**d.    Any claim that Ridge copied is refuted by the evidence.**

2    Mosaic claimed Ridge must have copied Mosaic's design, for example, from a

3 shared source such as a manufacturer. Ex. A (TAC), ¶ 44. Mosaic produced no evi-

4 dence of this, and the evidence that exists contradicts this. Mosaic provided no evi-

5 dence it was selling any product embodying the trade dress between mid-2011 and

6 late 2019. In copyright law to determine if copying occurred, a plaintiff without direct

7 evidence of copying must show access to the work and a substantial similarity. *L.A.*

8 *Printex Indus. V. Aeropostale, Inc.*, 676 F.3d 841, 847 (9th Cir. 2011). Access re-

9 quires "wide dissemination" of the work or a "chain of events" linking the plaintiffs

10 work and the defendant's access. *Id.* Mosaic has produced no evidence of any "chain

11 of events." Mosaic's lack of evidence of any sales or "wide dissemination" of its wal-

12 let demonstrates Ridge cannot have copied.

13    Mosaic produced evidence of only a single manufacturer from 2010. Ex. K

14 Mosaic provided no other invoices, and no other evidence of any other manufacturer,

15 even for products it sells now. Mosaic claims it uses WhatsApp (a chat application

16 that destroys communications shortly after they are complete) to communicate with

17 manufacturers. As a result, it has produced no communications, invoices, or any other

18 documents relating to any manufacturer other than the single one in 2010. Ex. G,

19 63:25-64:14. Mosaic cannot even reach the only manufacturer it claims to have used.

20 Ex. G, 60:10-19, 61:9-16.

21    Ridge used one manufacturer from late 2012 prototyping through 2018. Kane

22 Decl. ¶¶ 6-7. The manufacturers Ridge and Mosaic identified are different. Mosaic's

23 is Top Art Co. Ltd. in Yiwa City, China, Ridge's is Balance Industrial Group (Hong

24 Kong) Co., Limited Ex. K, at 3. in Shenzen, near Hong Kong. The two manufacturers

25 are 700 miles apart. Mosaic has no evidence the manufactures communicated with

26 each other. No copying occurred and more importantly, Mosaic's own lack of evi-

27 dence regarding its own manufacturing, sales, and advertising makes Mosaic

28

---

Memo. of Points and Authorities for
Sum. Judg. Motion        8        Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

demonstrating that copying occurred impossible. Mosaic has not a single image taken before 2019 showing the actual product it supposedly sold and that Ridge supposedly copied. It cannot possibly show Ridge copied.

Even if copying were possible in the complete lack of any evidence that it occurred, copying alone is not sufficient. The type of copying envisioned by this standard is one that is designed to play on the goodwill associated with the earlier product. The copying envisioned in a sense presupposes secondary meaning as a source identifier. *See, e.g. Craft Smith, LLC v. EC Design LL*C 969 F.3d 1092, 1112 (10th Cir. 2020) (indicating that copying of a calendar design did occur, but that there are many other factors that may lead to copying); *See also Wal-Mart Stores,* 529 U.S. at 213 ("Consumers are aware of the reality that, almost invariably, even the most unusual of product designs … is intended not to identify the source, but to render the product itself more useful or more appealing."). With this in mind, the court in *Craft Smith* found that copying by others is but one indicator that a preexisting product may have acquired secondary meaning, but it is insufficient alone to show secondary meaning in the marketplace. *Craft Smith*, 969 F.3d at 1112.

Here, that is impossible. Ridge could not have copied a product of which it was unaware, a product with no sales, no advertising, and no consumer goodwill. Even if Mosaic's wallet were available somewhere, there was no reason to copy because Mosaic's wallet did not have any consumer goodwill associated with it. For purposes of this motion, Mosaic has no evidence that it did or could have had any recognition in the mind of any public. The ultimate question is whether the claimed trade dress has "become distinctive of the trade[dress owners] … goods in commerce." *Japan Telecom*, 287 F.3d at 873. Ridge did not copy if for no other reason than because Mosaic was so unknown there would be no point in doing so.

Memo. of Points and Authorities for Sum. Judg. Motion

9

Mosaic Brands, Inc. v. The Ridge Wallet LLC 2:20-cv-04556-AB-JC

**e.    Mosaic's sales beginning in 2019 are irrelevant for secondary meaning six years after Ridge began selling its wallet.**

Mosaic must prove its trade dress acquired secondary meaning before Ridge introduced its wallet. *Carter-Wallace*, 434 F.2d at 800; *Braun*, 975 F.2d at 826. Except for Mosaic listing its Clip II on Amazon.com and on its own www.storus.com website beginning in late 2019, it did not advertise the Clip II on the Internet or elsewhere. Mosaic's November 2019 advertising is too late (Pearce Decl. ¶ 17 and Exs. L–P) for secondary meaning because Ridge had been selling its wallet since 2013. Kane Decl. at 22-24; Exs. 6 and 7). Mosaic produced no evidence of the Clip II anywhere for sale from 2012 to 2019. Pearce Decl. ¶ 17. Ms. Kaminski admitted that if Mosaic had documents, they would have provided them. Ex. G, 43:9-12 ("Q: Do you have any invoices received for payment for any products from 2012 to 2018? A. If we gave it to you, we – it would be in the discovery we gave you. Q. Okay. And by 'products,' I mean the Storus Smart Money Clip II. A. It would be in the discovery that we provided.").

**f.    Mosaic's claimed advertising is inadequate to raise an issue of fact and insufficient for secondary meaning.**

Scott Kaminski, the inventor of Mosaic's Patent No. 7,334,616 (the "'616 patent"), claimed Mosaic "invested at least $25,000 in advertising the product" from 2011 to mid-2020. Ex Q, ¶ 12 (ECF 18-1). Assuming Mosaic spent the $25,000 evenly over the nine years and only for Clip II advertising, it would only be $2,500 annually, an insignificant amount needed to develop secondary meaning. And "[t]estimony from a single source is insufficient to demonstrate secondary meaning." *Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009).

Mosaic has no receipts for what it spent on advertising. It produced no documents and shredded any that might have existed. Pearce Decl. ¶ 17; Ex. D, 73:10-18. Even if it knows its total advertising expenditures, it cannot separate what it spent

Memo. of Points and Authorities for
Sum. Judg. Motion

10

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC

advertising the Clip II from other advertising. Mia Kaminski answered a deposition question:

> Q. Did you track advertising spend from 2011, the introduction of the product, until 2020 in any way?
>
> A. Well, we went to trade shows, and, you know, those costs are marketing and advertising. So those are hard costs, but, you know, it covers all of our products when we go. We don't just take one item. We're not a one item company.
>
> Q. Right. But do you track that? Do you have records of that spend, or where it was spent, or anything like that?
>
> A. We didn't really track it. In our heads, I guess.

Ex. G (Kaminski Feb. 5, 2021, Rule 30(b)(6) depo.), 71:4-15.

A Google word search and the Wayback Machine[2] show Mosaic's first Internet listing for the Clip II occurred in late November 2019. Exs. L, M, N, O, P.[3] Google searches limited to those results before October 31, 2019, show no website associated with any Clip II wallets. Between October 21 and December 1, 2019, the Wayback Machine only shows one such page in 2020. *Id.* Mosaic made a Facebook post on November 27, 2019 regarding its "new" wallet. Ex. N. The same day the Amazon.com listing for the Clip II says, "first date available." Ex. O. The website of the associated Storus products from the Wayback Machine show no Clip II product before June 2020. Pearce Decl. ¶ 22; Ex. P. Mosaic provided no evidence its Clip II was available for sale anywhere from 2011-2019. Pearce Decl. ¶ 17. Mosaic's CEO

---

[2] The "Wayback Machine" "makes it possible to surf more than 450 billion pages stored in the Internet Archive's web archive so visitors of the site can review how a webpage looked on certain dates." *Larsen v. Vizio, Inc.*, SACV-14-1865-CJC, 2017 WL 3084273, at *5 (C.D. Cal. June 26, 2017) (internal quotation marks omitted).

[3] Web page capture dates appear in the upper right or in red text in the upper header.

cannot remember how many sales occurred in any year from 2012-2019, and Mosaic shredded any evidence that might have existed before 2016. Ex. D, 73:23-74:19.

"A product's trade dress attains secondary meaning when the purchasing public associates the dress with a single producer or source rather than just the product itself…." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (holding millions of dollars in advertising without more insufficient to confer trade dress rights on Prestone antifreeze's yellow jug). See also J.T. McCarthy, *McCarthy on Trademarks* § 8:8.50 (5th ed.) ("[S]econdary meaning cannot usually be proven by advertising that merely pictures the claimed trade dress and does nothing to emphasize it or call attention to it." No evidence supports consumers associating Mosaic's Clip II wallet with Mosaic as the source. Even the photos in its advertising from 2019—which are too late—add nothing because they do not "involve 'image advertising,' that is, the ads must feature in some way the trade dress itself." *First Brands,* 809 F.2d at 1383.

### g.    If Mosaic ever had trade dress rights, it abandoned them.

Mosaic's inability to present contrary evidence shows it was not selling its Clip II from 2012 through 2019. Even accepting as true Mosaic's allegation of selling about 400 Clip II wallets in 2011, six years without sales abandons any trade dress rights. See 15 U.S.C. § 1127 ("Nonuse for 3 consecutive years shall be prima facie evidence of abandonment."). Mosaic has no evidence but its own self-serving testimony that it used the alleged trade dress then. Pearce Decl. ¶ 17; Exs. L-P; Ex. D, 43:9-15.

### h.    Mosaic has no pre-2013 evidence of secondary meaning.

Mosaic has an unsolvable problem for establishing secondary meaning: It must prove secondary meaning before 2013 when Ridge introduced its wallet. *Braun*, 975 F.2d at 826 (holding a trademark owner must show secondary meaning existed before an accused infringer sells it product). Therefore, it needs evidence of the wallet

market and how the public reacted to any advertising before 2013. But Ms. Kaminski admitted Mosaic did not follow the wallet market. She testified, "I – we weren't really looking until customers and friends brought it to our attention that the Ridge was knocking off our exact product. Q. When was that? A. I think it was 2019 when I first heard of it from friends, and I started looking on Amazon and seeing all these people making an exact product." Ex. G, 48:8-14.

Timing is critical because "[s]econdary meaning is a time-related concept: it exists at a specific time, in a specific place, among a specific group of people who recognize that specified matter indicates commercial origin of a specified type of product or service from one unique commercial source." 4A L. Altman & M. Pollack, *Callmann on Unfair Competition, Trademarks, and Monopolies* § 20.23 (4th ed. 2017). "Therefore, a survey is only probative if it deals with conditions at the appropriate time." *Id.* Any survey Mosaic introduces must show secondary meaning existing before 2013. No survey Mosaic might obtain could prove secondary meaning existed before 2013 especially with evidence of fewer than 400 sales in 2011 and no recollection or documents or sales or advertising after 2011.

### i.    Mosaic's statements refute it could have acquired secondary meaning.

Mosaic's statements contradict any evidence the 400 wallets it sold in 2011 were its Clip II. Its 2020 website for the Clip II identifies the wallet as "**NEW**." Ex. I (ECF 1-4, p. 5), 44 (emphasis in original). No product on sale since 2011 remains "new." Its copyright claim also refutes Mosaic's 2011 date.[4] Its copyright application states: "Date of 1st Publication: September 01, 2019." Ex I (ECF 1–3, p. 3), 30. The first sale can be no earlier than the first publication.

---

[4] The Court dismissed the copyright claim as part of its dismissal of the complaint (ECF 27). Mosaic did not pursue the copyright claim following its FAC.

### 2. Laches bars the trade dress claims because Mosaic waited seven years to sue, three years beyond the statute of limitations.

Laches bars claims for past damages and injunctive relief. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002). To determine whether laches applies, the court looks at "the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action." *Id.* at 838. Next the court determines whether the delay was reasonable," which "is considered in light of the time allotted by the analogous limitations period." *Id.* The court also considers "whether the plaintiff has proffered a legitimate excuse for its delay." *Id.* Last, Ridge had to suffer prejudice if the suit proceeds. *Id.* at 839.

Mosaic delayed seven years from Ridge's 2013 introduction, Kane Decl. ¶¶ 2-3, until Mosaic sued in 2020. When any wrongful conduct occurred outside the limitations period, courts presume laches. *Jarrow,* 304 F.3d at 836–37; *Tillamook Cty. Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006) (holding laches is presumed if plaintiff sues outside the limitations period).

The Lanham Act has no explicit statute of limitations, but courts borrow the period from analogous state laws, here, four years. *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 n.11 (9th Cir. 2006). Mosaic is three years too late.

Mosaic might claim it knew nothing about Ridge's wallet, but it should have known. "Companies expecting judicial enforcement of their marks must conduct an effective policing effort." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (citation omitted). A trademark owner is "chargeable with information it might have received had due inquiry been made." *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002). *See also Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893) (holding a plaintiff cannot rely on ignorance of facts that would "put upon a man of ordinary intelligence the duty of inquiry"); and *Chandon Champagne Corp. v. San Marino*, 335 F.2d 531, 535 (2d Cir.1964) (holding

"'knew or should have known' is a logical implementation of the duty to police one's mark."

Ridge's sales were large and its advertising public. (Kane Decl. ¶¶ 9-11; 22-24). Mosaic's obligation to police its trade dress required it to determine if any other companies sold or advertised "infringing" wallets. It had "ample opportunity to discover defendant's activities before defendant developed a substantial business." *E-Sys., Inc. v. Monitek*, Inc., 720 F.2d 604, 607 (9th Cir. 1983). Claiming it failed to police its trade dress is not an excuse for its delay. "We didn't know" also is not credible. Companies policing their trade dress also do not shred potential evidence demonstrating the existence of their trade dress such as documents of sales or advertising spend. Ex. D, 73:10-18.

Mosaic's delay caused Ridge's prejudice because Ridge "invested money to expand its business or entered into business transactions based on [its] presumed rights" in a disputed mark. *Miller*, 454 F.3d at 999. The Kane declaration shows that during the delay from the 2013 KickStarter campaigns when Ridge first sold its accused wallet through 2019, the year before Mosaic sued, Ridge invested more than tens of millions of dollars in advertisements and had its sales grow from hundreds of thousands to tens of millions annually. Kane Decl. ¶¶ 9-11; Exs. 3 and 4. Storus claims, with no documentary support, to have invested $25,000 in that same market. Ex Q, ¶ 12. Ridge's investment over this time is sufficient prejudice to Ridge to invoke laches. Mosaic cannot find consumers from 2013 and earlier who still remember what they thought then. But because the seven-year delay presumes laches, *Internet Specialties W., Inc. v. Milon-Digiorgio Enters*., 559 F.3d 985, 990 (9th Cir. 2009), the burden shifts to Mosaic to prove Ridge has not been prejudiced by its delay. Mosaic has no evidence to meet its burden.

### 3.  Mosaic cannot meet its burden to prove any trade dress is not functional because utilitarian advantage stems the claimed trade dress.

"The fact that product design almost invariably serves purposes other than source identification not only renders inherent distinctiveness problematic…. Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves…." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 213 (2000) "In the case of product design … consumer predisposition to equate the feature with the source does not exist." *Id.*

"The requirement of nonfunctionality is based 'on the judicial theory that there exists a fundamental right to compete through imitation of a competitor's product, which right can only be temporarily denied by the patent or copyright laws." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002) (citation and internal quotation marks omitted). Mosaic, "who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). It not only lacks any evidence to satisfy that burden, but substantial evidence confirms functionality.

A trade dress is functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Traffix*, 532 U.S. at 33. The Ninth Circuit determines functionality using these factors: "(1) whether advertising touts the utilitarian advantages of the design, (2) whether the particular design results from a comparatively simple or inexpensive method of manufacture, (3) whether the design yields a utilitarian advantage and (4) whether alternative designs are available." *Talking Rain Bev. Co. Inc. v. S. Beach Bev. Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (easy-to-grip bottle functional especially when called "Grip Bottle" and advertised with "Get a Grip!" slogan.).

Mosaic claims a trade dress in its STORUS Clip II's (a) rounded edges, (b) pronounced, off center, half-circle notch, (c) seven visible rivets along the border, (d)

"beer glass"-shaped money clip with a raised end, and (e) carbon fiber exterior look." Ex. A (ECF 66), ¶ 35. It has the burden to prove each is not functional. 15 U.S.C. § 1125(a)(3). But Mosaic's 2019–2021 advertising and statements in Mosaic's '616 patent show Mosaic considers the features functional. Mosaic has no contrary evidence or plausible explanation, just attorney argument. The Kane declaration also confirms their functionality.

Advertising to establish a protectable trade dress should tell consumers to "look for" the design because it identifies the seller. *See First Brands*, 809 F.2d at 1383 (Because advertising did not urge consumers to look for the "familiar yellow jug" of Prestone antifreeze, plaintiff could not establish secondary meaning. Mosaic took the opposite approach. It touts its wallet's function using phrases like "It is slim and fits into a front pants pocket jacket pocket or purse," "Design: It is a 2-in-1 product with a traditional style money clip attached to a chamber," "Slim + Ultra Light: It is significantly thinner than a traditional leather wallet …," and "High Quality: It is made from 100 percent real carbon fiber and 304 stainless steel…. It is durable and lasts." Ex. I (ECF 1-4, p. 5), 44.

A recent advertisement touts the wallet's functionality, "FUNCTIONAL & SLIM-Holds 1-12 cards without stretching out. The slim wallet is ideal for carrying business cards, credit and debit cards, bills etc. The outside notch allows you to push out the cards easily." Pearce Ex. R, p. 1.

Rounded corners are functional because "rounded corners improve 'pocketability' and 'durability'…." *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 993 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016) (iPhone's functionality). The Kane declaration explains the rounded corners make inserting the wallet into pants pockets easier. Sharp corners also are more likely to scratch a user. Rounded corners also conform to credit cards' rounded corners. Kane Decl. ¶ 18. Mosaic

Memo. of Points and Authorities for Sum. Judg. Motion

17

Mosaic Brands, Inc. v. The Ridge Wallet LLC 2:20-cv-04556-AB-JC

advertising also stresses comfort when a user inserts the wallet into a pocket. Ex. R, p. 5.

Mosaic's '616 patent, now dismissed,[5] agrees. The '616 patent specifies, "The exterior surfaces of the [wallet] assembly are rounded and smooth to prevent snagging to a surface when in use." Ex. S (U.S. Pat. No. 7,334,616), 1:66-2:1. The patent continues, "It should be evident the exterior surfaces of the device 10 [wallet], in panels 20 and 22 and in the money clip 24 are rounded to provide a smooth exterior surface. Also, the ends and sides of the device are comfortably rounded to provide an esthetic appearance and comfortable feel when the card holding and money clip device 10 is used." Ex. S, 4:66-5:4. This functionality even appears in the claims: "The holder of claim 1 wherein, … the outer surface of said holder formed by said panels having rounded edges and smooth exterior surfaces." Ex. S, Claim 3 and "The holder of claim 12 wherein the outside surface of said holder has rounded edges for avoiding snagging and tearing of surrounding materials." Ex. S, Claim 15.

Mosaic's advertising, "The outside notch allows you to push out the cards easily," Ex. R. p. 1, confirms the semicircular notch is functional. The '616 patent also demonstrates the functionality of the notch, stating, "These two cutout portions 76 and 78 provide access to cards held within the interior of the assembled device. The cutout 76 in panel 22 is larger to permit viewing of a surface of a card within the device 10 and for finger contact in removing an outermost card. The cutout 78 in panel 20 permits adequate finger contact without outermost card within the device to provide for ease of removal of such a card from the device open end." Ex. S, 4:50-57. The functionality again appears in the claims "The holder of claim 12 wherein said first panel and said second panel includes cutouts to facilitate insertion and removal of rigid cards …." 'Ex. S, Claim 16.

---

[5] See ECF 101 dismissing the patent infringement claim.

Ridge agrees its notch is functional. The notch is offset to accommodate the encircling elastic band. Kane Decl. ¶¶ 12-14. The notch allows users to press upward to push inserted cards out the other end of the plates. Kane Decl. ¶¶ 13-14. It is semicircular because fingers and thumbs are rounded. *Id*., ¶ 14. Enabling a person to access the cards, and accepting users' fingers comfortably are the primary functions of the cutout being semicircular. The notch's location avoids the elastic band. *Id*. ¶¶ 12-14.

Mosaic asserts its seven screws are a feature telling the public that its wallet is its trade dress. Screws in Mosaic's wallet are functional to hold each outer plate to the respective panel. Having seven screws also is functional. Four are at the corners for strength. Two screws are on the longer side for spacing on the sides of the elastic band. The other side has no band, so its single screw mounts in the center of the longer side. Kane Decl. ¶¶ 15-17.

The money clip's shape is functional. It must exert enough force to hold money, and the raised end enables users to easily insert currency. Kane Decl. ¶ 19. Mosaic's advertising calls the clip's shape "traditional." Ex. T, p. 9. A more recent advertisement about the tapered clip says, "The tapered design allows the Smart Wallet to slide in and out of a pocket without ripping or tearing the fabric." Ex. R, p. 3.

Mosaic's advertising confirms carbon fiber is functional because it "is ultra light…" and "RFID blocking material"). Ex. I, (ECF 1-4, p. 5), 44; Ex. R, p. 3. A more recent advertisement lauding function says, "The Smart Wallet is made out of carbon fiber RFID blocking material. It has a dual inner plate design to protect valuable credit cards, IDs and Information from scanner fraud and theft." Ex. R, p. 3. Mosaic admits that carbon fiber is known for being strong and light. Ex. A (ECF 66 (TAC)) at ¶ 39 ("Indeed, carbon fiber is frequently used on aircraft and sports cars for its light weight and durability, . . . .").

Mosaic also claims the '616 patent covers Ridge's wallets. Ex. R, p. 1 ("Smart Wallet is a PATENTED 2-in-1 money clip + credit card holder wallet all in one.")

That claim supports functionality because its "patent is strong evidence that the features therein claimed are functional." *Traffix*, 532 U.S. at 29.

The wallet design is simple to manufacture. Cutting Ridge's aluminum panels and carbon fiber covers is a conventional process. The notch and holes for the joins (screws or rivets) can be made during the cutting step, and forming the groove in the aluminum panels is not complex. The sections of the one-piece elastic band can be attached by adhesive or sewn. Assembly is accomplished by aligning the band, panels and covers and fastening the panels and covers with joins. Kane Decl. ¶ 20.

*Talking Rain* supports functionality. Mosaic's advertising touts its wallets' function. Ex. I (ECF 1-4, p. 5), p. 44 (quoted previously). Manufacturing it is simple, Kane Decl. ¶ 20. The wallet's utilitarian advantages are evident. 349 F.3d at 603. Alternative designs are available, *Talking Rain*, 349 F.3d at 603, but *Traffix* discounts the alternative-design factor, 532 U.S. at 33. So the court in *Talking Rain* held "the existence of alternative designs cannot negate a trademark's functionality. But the existence of alternative designs may indicate whether the trademark itself embodies functional or merely ornamental aspects of the product." 349 F.3d at 603. Alternative designs cannot overcome Mosaic's ads touting its wallet's function and its '616 patent it claims covers its trade dress.

This motion shows, "Since at least some (and in this case significant) utilitarian advantage stems from the visual appearance, the presumption of functionality remains intact." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 680 (9th Cir. 2012). *See also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir. 2002) (denying trade dress protections because where "'the whole is nothing other than the assemblage of functional parts,' our court has already foreclosed this argument, holding that 'it is semantic trickery to say that there is still some sort of separate "overall appearance" which is non-functional.'").

1

## E.   CONCLUSION

2

　　　Ridge infringes no Mosaic trade dress because Mosaic has nothing protectable.

3

Mosaic cannot show secondary meaning because it has no evidence of sales or adver-

4

tising and Ridge could not have copied. Mosaic's use of the claimed trade dress has

5

not been exclusive. Mosaic's claimed trade dress also is functional, and Mosaic has

6

no evidence to meet its burden showing otherwise. Laches also bars the trade dress

7

claim because Mosaic sued three years beyond the related statute of limitations and

8

has no evidence that Ridge has not been prejudiced by its delay.

9

　　　For these reasons, Ridges requests the Court grant this summary judgment mo-

10

tion.

11

12

March 19, 2021

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Jonathan Pearce*
Jonathan Pearce
SoCal IP Law Group LLP

Attorneys for Defendant and Counter-
claimant The Ridge Wallet LLC

Memo. of Points and Authorities for
Sum. Judg. Motion

21

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC