# Exhibit A

Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
**SML AVVOCTI P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **Mosaic Brands, Inc.**, a Delaware corporation, d/b/a **Storus**,<br><br>Plaintiff,<br><br>v.<br><br>**The Ridge Wallet LLC**, a California company,<br><br>Defendant. | Case No. 2:20-cv-04556-AB-JC<br><br>**THIRD AMENDED COMPLAINT FOR PATENT AND TRADE DRESS INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to this Court's leave to amend (*see* ECF No. 62 at 18), Plaintiff Mosaic Brands, Inc. d/b/a Storus hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action including for infringement under the patent laws of the United States, 35 U.S.C. § 101, *et. seq.*, and the trademark laws of the United States, 15 U.S.C. § 1051, *et. seq.* This Court has subject matter jurisdiction including under 28 U.S.C. §§ 1331 and 1338(a).

2. This Court has personal jurisdiction over Defendant because it is headquartered and/or has its primary place of business in this District, where it has committed the infringing acts alleged herein.

3. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b)-(c) and 1400.

## PARTIES

4. Plaintiff is a Delaware corporation having its principal place of business in Alamo, California.

5. Upon information and belief, Defendant The Ridge Wallet LLC is a California company having a principal place of business at 28632 Roadside Drive #265, Agoura Hills, CA 91301.

## CLAIM I—PATENT INFRINGEMENT

6. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

7. Plaintiff is the exclusive licensee of U.S. Patent No. 7,334,616 ("the '616 patent") entitled "Card-Holding and Money Clip Device," which duly and lawfully issued on February 26, 2008. The '616 patent covers the products and methods claimed, and protects the exclusive right to utilize those inventions, which were not routine or conventional at the time of the inventions. A true and correct copy of the '616 patent is attached hereto as Exhibit A.

8. In April 2009, the inventor assigned the '616 patent to Mosaic International LLC, which in 2013 was succeeded by LE Holdings LLC which owns the '616 patent. For many years, Plaintiff has been and is the exclusive licensee authorized to sell the patented product designs. One if the patented products is Plaintiff's Smart Money Clip II ("SMCII") shown in Exhibit B.

9. The claims of the '616 patent are directed to, in Claim 1 for example, "a holder for securely and simultaneously retaining flexible articles and rigid cards" including, *inter alia*: (a) "a nominally rectangular and nominally flat planar first

1  panel having interior and exterior surfaces," (b) "a lip extending nominally around
2  three edges of said first panel along said interior surfaces," (c) "said lip being at
3  right angles to the plane of said first panel," (d) "a nominally rectangular and
4  nominally flat planar second panel having interior and exterior surfaces," (e) "a lip
5  extending nominally around three edges of said second panel along said interior
6  surface and configured to form a mirror image of said first panel," (f) "said second
7  panel being adapted to be attached to said first panel along said three edges to form
8  an open-ended enclosure of sufficient size to store said rigid cards within said
9  interior of said enclosure," (g) "said enclosure being nominally rectangular with two
10 longitudinal sides, an open end, and a closed end," (h) "a resilient article retaining
11 member having an attached end and a free end extending from one end of said
12 enclosure and over the exterior of said first panel," (i) "said free end of said article
13 retaining member being biased toward said exterior surface of said first panel," and
14 (j) "wherein said first panel and said second panel each has lips of varying
15 thickness."

16    10.    Defendant has made, used, offered for sale, sold and/or imported into
17 the United States products covered by the claims of the '616 patent. For example,
18 as shown in Exhibit C, Defendant sells "The Ridge Wallet" which meets all of the
19 elements of Claim 1 of the '616 patent, either literally or equivalently, as shown and
20 explained in Exhibit D and hereinbelow.

21    11.    For a further element-by-element comparison, first it is indisputable
22 that the Ridge Wallet is "a holder for securely and simultaneously retaining flexible
23 articles and rigid cards."

24    12.    For element 9(a) hereinabove, it is indisputable that the Ridge Wallet
25 has "a nominally rectangular and nominally flat planar first panel having interior
26 and exterior surfaces," as shown with arrows pointing to the "first panel" at Pages 2-
27 3 of Exhibit D. The identified "first panel" is both rectangular and flat, and it
28

clearly has both an interior surface and an exterior surface, as would any flat, rectangular object.

13. For element 9(b) hereinabove, it is certainly plausible that the Ridge Wallet has "a lip extending nominally around three edges of said first panel along said interior surfaces," as shown with arrows pointing to the "lips" at Pages 2-3 of Exhibit D. As shown and explained in Exhibit D, the identified "lips" are—upon Plaintiff's inspection of the Ridge Wallet—formed via a loop of interconnected "elastic bands" which attach to and extend along the interior surface of the first panel and second panel, and extend to and around three edges of the panels. These elastic bands literally create the "lips" which perform the claimed function of "retaining flexible articles and rigid cards."

14. For element 9(c) hereinabove, it is indisputable that the Ridge Wallet has "said lip being at right angles to the plane of said first panel," as shown with arrows pointing to the "lip at 90 angle" at Pages 2-3 of Exhibit D. As shown and explained in Exhibit D, the identified "elastic bands" extend "around three edges" of the first panel and by doing so, orient at "at right angles to the plane of the first panel."

15. As further explained at Page 2 of Exhibit D (emphasis added): "The Ridge Wallet has a nominally rectangular and nominally flat planar first panel, having interior and exterior surfaces. It also has elastic bands, which are attached to the first panel on three edges of the first panel, and ***are functionally identical and equivalent to lips extending nominally from the first panel***. These elastic bands extend nominally around three edges of the first panel along the interior surface; are attached to the first panel; and are at right angles to the plane of the first panel. The inner surface of the elastic bands are perpendicular and adjacent with the inner surface of the first panel, and form the inner enclosure described in 1(b) together."

16. For element 9(d) hereinabove, it is indisputable that the Ridge Wallet has "a nominally rectangular and nominally flat planar second panel having interior

and exterior surfaces," as shown with arrows pointing to the "second panel" at Pages 4-5 of Exhibit D. The identified "second panel" is both rectangular and flat, and it clearly has both an interior surface and an exterior surface, as would any flat, rectangular object.

17. For element 9(e) hereinabove, it is certainly plausible that the Ridge Wallet has "a lip extending nominally around three edges of said second panel along said interior surface and configured to form a mirror image of said first panel," as shown with arrows pointing to the "lips" at Pages 4-5 of Exhibit D. As shown and explained in Exhibit D, the identified "lips" are—upon Plaintiff's inspection of the Ridge Wallet—formed via a loop of interconnected "elastic bands" which attach to and extend along the interior surface of the first panel and second panel, and extend to and around three edges of the panels. The panels and the orientation of the elastic bands creates a mirror image. These elastic bands literally create the "lips" which perform the claimed function of "retaining flexible articles and rigid cards."

18. For element 9(f) hereinabove, it is indisputable that the Ridge Wallet has "said second panel being adapted to be attached to said first panel along said three edges to form an open-ended enclosure of sufficient size to store said rigid cards within said interior of said enclosure," as shown with arrows pointing to the "enclosure" with an "open end," a "closed end," and showing cards retained within the enclosure, at Pages 4-5 of Exhibit D.

19. For element 9(g) hereinabove, it is indisputable that the Ridge Wallet has "said enclosure being nominally rectangular with two longitudinal sides, an open end, and a closed end," as shown with arrows pointing to the rectangular-shaped "enclosure" with an "open end," a "closed end," and showing cards retained within the enclosure, at Pages 4-5 of Exhibit D.

20. As further explained at Page 4 of Exhibit D (emphasis added): "The Ridge Wallet has a nominally rectangular and nominally flat planar second panel, having interior and exterior surfaces. It also has elastic bands, which are attached to

the second panel on three edges of the second panel, and are functionally identical and equivalent to lips extending nominally around three edges of the second panel. These elastic bands extend nominally around three edges of the second panel along the interior surface; are attached to the second panel; and are at right angles to the plane of the second panel. ***They are mirrored to the attachment points on the first panel***. The inner surface of the elastic bands are perpendicular and adjacent with the inner surface of the first and second panels, and form an opened ended enclosure of sufficient dimensions to hold rigid credit cards inside of the enclosure. The enclosure has two longitudinal sides and is nominally rectangular, like the credit cards it is designed to hold. It also has an open end and a closed end, which allows a user to place credit cards inside of the enclosure."

21. For element 9(h) hereinabove, it is indisputable that the Ridge Wallet has "a resilient article retaining member having an attached end and a free end extending from one end of said enclosure and over the exterior of said first panel," as shown with arrows pointing to this element at Pages 5-6 of Exhibit D.

22. For element 9(i) hereinabove, it is indisputable that the Ridge Wallet has "said free end of said article retaining member being biased toward said exterior surface of said first panel," as shown with arrows pointing to this element at Pages 5-6 of Exhibit D.

23. As further explained at Page 5 of Exhibit D (emphasis added): "The Ridge Wallet has a resilient article retaining member used to hold currency. This member is attached to one end of the wallet and possesses a free end extending from the attached end, over the exterior of the first panel. This member is also ***biased and bent toward the exterior of the panel so it can securely hold currency underneath the clip***."

24. For element 9(j) hereinabove, it is plausible that in the Ridge Wallet, "said first panel and said second panel each has lips of varying thickness," as shown with arrows pointing to this element at Page 6-7 of Exhibit D.

25. As further explained at Page 6 of Exhibit D (emphasis added): "The elastic bands of the Ridge Wallet are not of a uniform thickness. ***Elastic bands by the very nature of their construction vary in thickness throughout the band***. The rubber and latex cords which allow an elastic band to return to its original shape are significantly thicker than the other threads used to make the band. Therefore, sections of the band containing these cords are significantly thicker than sections without. This can be seen in the image of the Ridge Wallet below, where it is easy to see that ***the elastic band has areas of varying thickness throughout, especially at the edges where no elastic cords are present***. The ***thickness of an elastic band also changes as more cards are inserted into the wallet, and the rubber and latex cords are stretched thin***."

26. To the extent that the lips formed by elastic bands in the parties' products could be considered different structurally from the "lips" claimed in the '616 patent, it is certainly plausible that elements (b) and (e) hereinabve are met via equivalent structure in The Ridge Wallet, where "the difference between the claimed invention and the accused product [is] insubstantial," or "the accused product [] performs the substantially same function in substantially the same way with substantially the same result as each claim limitation." Here, the function of the claimed "lips" and the "elastic bands" construction of The Ridge Wallet is the same: *i.e.*, retaining items/cards within an enclosure. The "way" is the same also: *i.e.*, creating a barrier on three sides of the enclosure so that the items/cards cannot slip out. The result is identical: *i.e.*, a three-sided enclosed chamber for items/cards is formed. It is certainly plausible that any structural difference between the claimed "lips" and the elastic bands structure of The Ridge Wallet is insubstantial vis-à-vis the function/way/result of these structures.

27. By the acts of making, using, offering to sell, selling and/or importing the accused infringing systems and/or methods, Defendant has directly infringed the '616 patent under 35 U.S.C. § 271(a).

28. On information and belief, Defendant has caused, encouraged and aided others, including customers, to directly infringe the '616 patent having full knowledge of the '616 patent and the specific intent that its acts and the acts of its customers and/or others to directly and/or indirectly infringe the '616 patent. For example, customers who buy and use The Ridge Wallet are direct infringers, who are induced to infringe by Defendant's marketing, promotion and sales activities engaged in with the specific intent to induce direct infringement by each of Defendant's customers.

29. By the acts of actively inducing others to infringe the '616 patent, Defendant has infringed the '616 patent under 35 U.S.C. § 271(b). On information and belief, having knowledge of the '616 patent, Defendant specifically intended for its customers to infringe the '616 patent by using and/or re-selling the accused infringing systems and/or methods. Not only did Defendant know its Ridge Wallet product infringes the '616 patent, but Defendant's advertising and promotional materials instructed its customers to use the product in a manner which infringes the '616 patent, thereby making its customers direct infringers.

30. The acts of infringement asserted herein have been and continue to be deliberate and willful, at least since Defendant first learned about the '616 patent long before this action. For example, on information and belief, in about 2014 Defendant obtained one or more samples of Plaintiff's SMCII product from a manufacturer/factory common to both parties, and thereafter Defendant proceeded to copy exactly the SMCII design for Defendant's own product, which has proved highly successful for Defendant for a long time since 2014.

31. Defendant has derived and received gains, profits and advantages from the aforesaid acts of infringement, and Plaintiff has lost profits and has otherwise been damaged and is entitled to monetary relief in an amount to be determined at trial.

32. The infringement of the '616 patent has caused and continues to cause irreparable harm to Plaintiff, for which there is no adequate remedy at law, and the infringement will continue unless and until it is enjoined by this Court.

### CLAIM II—TRADE DRESS INFRINGEMENT

33. Plaintiff incorporates by this reference all of the allegations stated in the above paragraphs.

34. Through many years of consistent, creative effort, Plaintiff Storus (including its predecessors-in-interest) has created numerous original designs and products that have proven to be very popular with consumers and successful at retail in the United States. One if these original product designs is the SMCII product.

35. Because of the popularity and success of the SMCII design and product, its non-functional aspects have has become distinctive; that is, the appearance of the SMCII design and product indicates to consumers that the source and origin of these products is Plaintiff Storus, not competitors or others. For example, many of the design aspects of the SMCII product are non-functional; specifically, its (a) rounded edges, (b) pronounced, off center, half-circle notch, (c) seven visible rivets along the border, (d) "beer glass"-shaped money clip with a raised end, and (e) carbon fiber exterior look—all as shown in Exhibits B-C (collectively "the SMCII trade dress").

36. By March 2011, Plaintiff's predecessor Storus Corporation was selling the SMCII product displaying the SMCII trade dress. By its first use in interstate commerce of the SMCII trade dress in 2011, and its use since that time, Plaintiff acquired and has maintained trade dress rights in and to the SMCII trade dress.

37. By 2013, all intellectual property—including the '616 patent and the SMCII trade dress (including attendant goodwill)—was assigned to successor company LE Holdings LLC. For many years since, Plaintiff Storus has been and is the exclusive licensee authorized to sell products embodying the SMCII trade dress.

38. The rounded edges of the SMCII design, for example, yield no utilitarian advantage over alternative edge shapes, no advertising touts the rounding as utilitarian, and the design is not especially simple or inexpensive to manufacture. The pronounced, off center half-circle notch is has no utilitarian advantage over different locations or shapes for a notch (which alternative designs are available), no advertising touts the particular SMCII design as utilitarian, and it is not especially simple or inexpensive to manufacture. The number and location of the seven visible rivets provides no utilitarian advantage over different arrangements which could be used, no advertising touts the rivets as utilitarian, and it is not especially simple or inexpensive to manufacture. The "beer glass" shape for the money clip has no utilitarian advantage over different shapes (such as Defendant's original non-tapered shape), no advertising touts the shape as utilitarian, and it is not especially simple or inexpensive to manufacture.

39. Finally, the carbon fiber look of the product has no utilitarian advantage over other materials, no advertising touts this material as utilitarian, and it is not especially simple or inexpensive to manufacture. Indeed, carbon fiber is frequently used on aircraft and sports cars for its light weight and durability, but the brushed carbon fiber look here is aesthetic, not functional. The wallet will not be travelling at supersonic speed, so the strength and rigidity of carbon fiber is largely irrelevant. It does, however, provide a very sleek, distinctive, and attractive look and feel for the product.

40. These many non-functional design aspects of the SMCII product, taken together as a total product image as the SMCII trade dress, is distinctive and has secondary meaning among the relevant consuming public, including because Plaintiff Storus for many years has been selling its SMCII product exclusively, and Plaintiff has significantly advertised and sold the SMCII product to many thousands of customers, which has established Plaintiff with its primary place in the market for these products.

41. The Ridge Wallet product shown in Exhibit C and sold by Defendant is likely to cause confusion (and indeed, has caused confusion) among consumers concerning whether the products originated or are licensed or authorized or endorsed by Plaintiff.

42. Defendant's false designations of origin have occurred in interstate commerce and have caused injury to Plaintiff including loss of goodwill and diversion of sales that likely would have been acquired by Plaintiff.

43. Defendant's false designations of origin have caused Plaintiff to suffer actual damages including lost profits, in an amount to be determined at trial, plus consequential damages. Defendant's false designations also have resulted and continue to result in the unjust enrichment via profits to Defendant.

44. Defendant has committed its acts of false designation willfully and maliciously to injure Plaintiff's business and improve its own, thereby entitling Plaintiff to an award of increased damages and attorney's fees. For example, on information and belief, in about 2014 Defendant obtained one or more samples of Plaintiff's SMCII product from a manufacturer/factory common to both parties, and thereafter Defendant proceeded to copy exactly the SMCII trade dress for its own product, which has proved highly successful for a long time since 2014.

45. Plaintiff also has suffered and continues to suffer irreparable injury, including damage to its customer relationships because of the false designations. Such irreparable injury cannot be remedied adequately unless Defendant is enjoined immediately from further false designations.

46. Plaintiff has no adequate remedy at law for the injuries it has suffered and continues to suffer, as it will be impossible for Plaintiff to determine the precise amount of damage it will suffer if Defendant's conduct is not restrained.

**PRAYER FOR RELIEF**

Therefore, Plaintiff prays for the following relief:

    A.    A determination that Defendant has infringed the '616 patent under 35 U.S.C. § 271, literally and/or under the doctrine of equivalents;

    B.    A determination that Defendant has infringed Plaintiff's SMCII trade dress rights under 15 U.S.C. § 1052 *et seq.*;

    C.    An accounting for damages adequate to compensate for the patent and/or trade dress infringement, including Plaintiff's actual damages including lost profits, treble damages, pre-judgment and post-judgment interest, and costs;

    D.    A determination of willful patent and/or trade dress infringement, and that this is an exceptional case, and an award of attorney's fees and expenses to Plaintiff; and

    E.    Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1) and (c), and L.R. 38-1, Plaintiff hereby demands a jury trial on all the issues in this action so triable of right by a jury.

Respectfully submitted,

Dated:  November 12, 2020    **SML AVVOCATI P.C.**

By:  /s/ Stephen M. Lobbin
       Attorneys for Plaintiff

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2020, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Stephen M. Lobbin*