Jonathan Pearce, Cal Bar. No. 245,776
jpearce@socalip.com
Michael D. Harris, Cal. Bar No. 59,470
mharris@socalip.com
Brian S. Tamsut, Cal. Bar No. 322,780
btamsut@socalip.com
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
Phone: (805) 230-1350 • Fax: (805) 230-1355

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| Mosaic Brands, Inc., | No. 2:20-cv-04556-AB-JC |
|---|---|
| Plaintiff, | Statement of Uncontroverted Facts and Conclusions of Law (Local Rule 56-1) |
| v. | Date: April 23, 2021 |
| The Ridge Wallet LLC, | Time: 10:00 a.m. |
| Defendant. | Judge: Birotte |
| And Related Counterclaim | |

| | **Uncontroverted Fact** | **Source** | **Ex.** |
|---|---|---|---|
| **1.** | Plaintiff Mosaic Brands, Inc. ("Mosaic") is a Delaware corporation having its principal place of business in Alamo, California. | 3d Amend. Compl. (ECF 66), ¶ 4. | A |
| **2.** | Defendant The Ridge Wallet LLC ("Ridge") is a California company having a principal place of business in Agoura Hills, California. | *Id*. ¶ 5. | A |
| **3.** | Mosaic claims to have sold the STORUS brand Smart Money Clip II ("Clip II") | *Id*. ¶ 8 and (ECF 66-2) | B |

| | **Uncontroverted Fact** | **Source** | **Ex.** |
|---|---|---|---|
| 4. | Mosaic claims the Clip II is a protected trade dress and the wallet Ridge sells infringes Mosaic's trade dress. | *Id.* ¶¶ 40, 41 and (ECF 66-3) | C |
| 5. | The photographs below show an assembled and an exploded view of the Ridge wallet accused on infringing Mosaic's trade dress. The accused Ridge wallet's longer side is about 2.3 inches, the shorter side is about 1.5 inches, and the wallet is about 0.25 inches thick when holding no cards.<br><br>[image of assembled and exploded Ridge wallet with labels: Removable Money Clip Or Cash Strap, Stainless Steel T5 Screws, Expandable Elastic Track, RFID-Blocking Plates] | Kane Decl. ¶¶ 3 and 4. | 1, 2 |
| 6. | Mosaic claims a trade dress in its Smart Money Clip II (Clip II) for (a) rounded edges, (b) pronounced, off center, half-circle notch, (c) seven visible rivets along the border, (d) "beer glass"-shaped money clip with a raised end, and (e) carbon fiber exterior look." | ECF 66, ¶ 35. | A |

| | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|
| | **Lack of secondary meaning**. | | |
| 7. | Except for four invoices from 2011 of fewer than 400 wallets, all for customers in the Southeast United States, Mosaic has no documents showing how many Clip II wallets it sold in any year from 2012 through 2018. | Pearce Decl. ¶ 6. | E |
| 8. | Mosaic has no oral evidence how many Clip II wallets it sold in any year from 2012 through 2018. | Kaminski Nov. 17, 2020 Depo. 73:23-74:19. | D |
| 9. | Mosaic has no pre-2019 advertisements or contemporaneous photograph of its Clip II wallet | Pearce Decl. ¶ 6, 9, 16, and 17. | |
| 10. | Mosaic contradicts any evidence the 400 wallets it sold in 2011 were the Clip II. Its 2020 website for the Clip II identifies the wallet as "**NEW**." No product on sale since 2011 remains "new." | Pearce Decl. ¶ 20. | N |
| 11. | Plaintiff's copyright claim also refutes Mosaic's 2011 date. The copyright application states: "Date of 1st Publication: September 01, 2019." The first sale can be no earlier than the first publication. | ECF 1–3, p. 3 | I |
| 12. | Mosaic did not advertise its Clip II wallet on the Internet until 2019 when Amazon.com and etsy.com listed the wallet for sale Mosaic's storus.com website also pictured it. | Pearce Decl. ¶¶ 17-22. | G, H, L-P |

| | | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|---|
| | 13. | Mia Kaminski answered a deposition question, "Did you track advertising spend from 2011, the introduction of the product, until 2020 in any way?<br>　　A. Well, we went to trade shows, and, you know, those costs are marketing and advertising. So those are hard costs, but, you know, it covers all of our products when we go. We don't just take one item. We're not a one item company.<br>　　Q. Right. But do you track that? Do you have records of that spend, or where it was spent, or anything like that?<br>　　A. We didn't really track it. In our heads, I guess. | Kaminski February 5, 2021 Depo. 71:4-15. | D |
| | 14. | The photos in Mosaic's advertising from 2019 do not involve "image advertising," asking viewers to "look for" or otherwise identifying the product by the trade dress itself. | Pearce Decl. ¶¶ 10, 25. | F, T |
| | 15. | Ridge introduced its accused wallet in 2013 | Kane Decl. ¶ 22. | 5, 6 |

| | **Uncontroverted Fact** | **Source** | **Ex.** |
|---|---|---|---|
| 16. | Many other competitors sell wallets like the Clip II. | Kaminski November 17, 2020 Depo. 97:10-22; 100:15-114:7; Kaminski February 5, 2021 Depo. 83:20-84:4. | D, G, H |
| 17. | Mosaic has no evidence its trade dress ever acquired secondary meaning. | | |
| 18. | Mosaic has no evidence its trade dress acquired secondary meaning before Ridge used the alleged trade dress. | | |
| 19. | No evidence shows consumers associating Mosaic's design with Mosaic as the source of the design. | | |
| 20. | Mosaic sells other wallets, but it has no evidence that the public treated the Clip II any differently as a source identifier from how the public treated its other wallets. | ECF-1 | I |

| | | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|---|
| | 21. | Scott Kaminski, the '616 patent's inventor, claimed, Mosaic "invested at least $25,000 in advertising the product" from 2011 to mid-2020, which is roughly $2,500 annually. That amount is a small percentage Mosaic would have needed to develop secondary meaning especially without evidence of image advertising. | ECF 18-1 ¶ 12 | Q. |
| | 22. | Mosaic abandoned any protectable trade dress because it has no evidence it was selling the Clip II between 2012 and 2019, three more years for prima facie abandonment under 15 U.S.C. § 1127. | Pearce Decl. ¶ 6, 9; Kaminski February 5, 2021 Depo., 43:9-12. | G, H, L-P |
| | 23. | Mosaic has no evidence of the market for wallets, what other companies were selling and advertising, how much Mosaic and its competitors were spending on advertising and how many wallets competitors were selling. | Pearce Decl. ¶ 6; M. Kaminski February 5, 2021 Depo., 48:6–48:14 | G |
| | 24. | Mosaic did not know the wallet market from 2012 to 2019. | Kaminski February 5, 2021 Depo., 48:6–48:14. | G |
| | 25. | Mosaic introduced no survey showing Mosaic ever had secondary meaning in its trade dress. | | |

| | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|
| 26. | To establish secondary meaning, Mosaic must show its use of the trade dress was substantially exclusive. Ridge sold its accused wallet for seven years since 2013. The parties' concurrent use since 2013 destroys any exclusivity. | Kane Decl. ¶ 9-10, 22-23. | |
| 27. | Many other companies sell similar wallets at retail. | Pearce Decl. ¶¶ 11-12; Kaminski February 5, 2021 Depo., 48:6–48:14. | G, H, L-P |
| 28. | Ms. Kaminski also admitted "there's hundreds of factories making it [the Clip II]." | Kaminski November 17, 2021 Depo., 97:10-22. | D |
| **Mosaic's claimed trade dress is functional** | | | |
| 29. | The features Mosaic claims for its trade dress are functional. | Kane Dec. ¶¶ 12-21. | |
| 30. | Mosaic's advertising uses phrases like "It is slim and fits into a front pants pocket jacket pocket or purse," "Design: It is a 2-in-1 product with a traditional style money clip attached to a chamber," "Slim + Ultra Light: It is significantly thinner than a traditional leather wallet …," and "High Quality: It is made from 100 percent real carbon fiber and 304 stainless steel…. It is durable and lasts." | ECF 1–4, p. 5. | I |

| | **Uncontroverted Fact** | **Source** | **Ex.** |
|---|---|---|---|
| 31. | No Mosaic advertising says, "The look of this wallet identifies Mosaic (or Storus)" or anything similar. | | |
| 32. | The rounded corners are functional. They make inserting the wallet into pants pockets easier. Sharp corners also are more likely to scratch a user. | *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 993 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016); Kane Decl. ¶ 18. | |
| 33. | Mosaic advertising also mentions easy insertion into pockets as a feature for rounded corners. | Complaint Ex. D (ECF 1-4) | I |

| Uncontroverted Fact | | Source | Ex. |
|---|---|---|---|
| 34. | Mosaic's '616 patent indicates rounded corners are functional. The '616 patent specifies, "The exterior surfaces of the [wallet] assembly are rounded and smooth to prevent snagging to a surface when in use." '616 patent at 1:66-2:1. The patent continues, "It should be evident the exterior surfaces of the device 10 [wallet], in panels 20 and 22 and in the money clip 24 are rounded to provide a smooth exterior surface. Also, the ends and sides of the device are comfortably rounded to provide an esthetic appearance and comfortable feel when the card holding and money clip device 10 is used." '616 patent at 4:66-5:4. This functionality even appears in the claims: "The holder of claim 1 wherein, … the outer surface of said holder formed by said panels having rounded edges and smooth exterior surfaces." '616 patent, Claim 3" and "The holder of claim 12 wherein the outside surface of said holder has rounded edges for avoiding snagging and tearing of surrounding materials." '616 patent, Claim 15. | '616 Patent, 1:66-2:1; 4:66-5:4; Claim 15; Pearce Decl. ¶ 25. | S |
| 35. | Mosaic's advertising confirms the semicircular notch is functional. "The outside notch allows you to push out the cards easily." | | R |

| | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|
| 36. | The notch allows users to press upward to push inserted cards out the other end of the plates. It is semicircular because fingers and thumbs are rounded. Accepting users' fingers comfortably is the primary function of the cutout being semicircular. | Kane Decl. ¶ 13. | |
| 37. | The '616 utility patent also demonstrates functionality of the notch, stating, "These two cutout portions 76 and 78 provide access to cards held within the interior of the assembled device. | '616 Patent, 4:50-57; Claim 16; Pearce Decl. ¶ 25. | S |
| 38. | The notch's location is functional to avoid the elastic band. | Kane Decl. ¶ 13. | |
| 39. | Having screws is functional because they hold each outer plate to the respective panel. | Kane Decl. ¶¶ 15-17. | |
| 40. | Having seven screws also is functional. Four are at the corners for strength. Two screws are on the longer side for spacing on the sides of the elastic band. The other side has no band, so its single screw mounts in the center of the longer side. | Kane Decl. ¶ 17. | |

| | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|
| 41. | The money clip's shape is functional. It must exert enough force to hold money, and its raised end prevents the clip from catching currency when the user tries to insert currency. Mosaic's advertising calls the clip's shape "traditional." | Kane Decl. ¶ 19. | |
| 42. | Mosaic's advertising calls the clip's shape "traditional." | Pearce Decl. ¶ 26. | T, p. 7. |
| 43. | A recent Mosaic advertisement about the tapered clip admits the money clip is functional. It says, "The tapered design allows the Smart Wallet to slide in and out of a pocket without ripping or tearing the fabric." | Pearce Decl. ¶ 24. | Ex. R, p. 3. |
| 44. | The '616 patent says clips serve functional purposes. "Proximal end 50 is formed so as to bias clip 24 toward surface 56 of panel 20, whereby flexible articles, such as, foldable paper currency (not shown) can be secured between distal end 54 and surface 56." '616 patent at 4:3-6. The patent also explains the curved "beer glass" shape of the money clip, stating , "It should be evident the exterior surfaces of the device 10 [wallet], in panels 20 and 22 and in the money clip 24 are rounded to provide a smooth exterior surface." '616 patent at 4:66-5:1. | '616 Patent, 4:3-6; 4:66-5:1; Kane Decl. ¶ 25. | S |

| # | Uncontroverted Fact | Source | Ex. |
|---|---|---|---|
| 45. | Mosaic's advertising confirms carbon fiber is functional because it "Slim + Ultra Light: It is significantly thinner than a traditional leather wallet but can hold up to 12 cards and IDs. It is ultra light and is comfortable in a front [pants or jacket pocket making it great for travel." | Pearce Decl. ¶ 13; ECF 1, Ex. D at 5. | I |
| 46. | Mosaic claims the '616 patent covers Ridge's wallets. The patent is strong evidence that the features claimed in the patent are functional." | Third Amended Complaint ¶ 8. | A |
| **Laches bars Mosaic's trade dress claim.** | | | |
| 47. | Mosaic delayed seven years from 2013 when Ridge first sold the accused wallet until Mosaic sued in 2020. | | |
| 48. | Mosaic's seven-year delay presumes laches, and Mosaic has no evidence showing Ridge's lack of prejudice. | Kane Decl. ¶¶ 6-7, 22-24. | |
| 49. | Mosaic has claimed it knew nothing about Ridge's wallet until 2019, but it should have known. | Kaminski February 5, 2021 Depo., 48:6–48:14 | |
| 50. | Ridge's sales were large and its advertising public. | Kane Decl. ¶¶ 9-10, 23-24. | |
| 51. | Evidence to support Mosaic's secondary meaning claim must include knowledge of the market. It has none and has no excuse for its lack of knowledge. | | |

## Conclusions of Law

| | Conclusion | Basis |
|---|---|---|
| 52. | This Court has subject matter jurisdiction of Mosaic's trade dress claims | 28 U.S.C. § 1338(a). |
| 53. | The Court has personal jurisdiction over defendant Ridge. | Answer (ECF 84, ¶ 2). |
| 54. | Venue is proper. | *Id.*, ¶ 3. |
| 55. | Because the claimed trade dress is the design of a product, it is not protected without secondary meaning. | *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 28 (2001). |
| 56. | Establishing secondary meaning requires evidence of "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." | *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). |
| 57. | Mosaic did not establish secondary meaning because it failed to present evidence of the public perception of its wallet design as an identification of Mosaic. | *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987). |
| 58. | Mosaic advertising from 2019 which contain photographs of its claimed trade dress wallet do not establish secondary meaning because they do not "involve 'image advertising,' that is, the ads must feature in some way the trade dress itself." | *Id.* |

| | Conclusion | Basis |
|---|---|---|
| 59. | Mosaic's lack of any business records of annual sales figures, annual advertising and expenses, the content of its advertising, or communications with its supplier(s) and its CEO lack of knowledge of that evidence prevent Mosaic from establishing secondary meaning. | |
| 60. | Because of Ridge's and third parties' use of the trade dress, Mosaic has not been the exclusive user of its trade dress. The lack of exclusivity is a factor against secondary meaning). | *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005). |
| 61. | Mosaic did not meet its burden to show that Ridge copied. | |
| 62. | Even if Ridge could show Mosaic copied its design, that is insufficient evidence of secondary meaning absent some other indication of consumer recognition in the claimed trade dress. | *Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 213 (2000). |
| 63. | Mosaic did not meet or overcome its burden to prove its wallet design is not functional. | 15 U.S.C. § 1125(a)(3). |
| 64. | Mosaic's trade dress is functional because "it is essential to the use or purpose of the device or when it affects the cost or quality of the device.". | *Traffix*, 532 U.S. at 33. |

| | Conclusion | Basis |
|---|---|---|
| 65. | Mosaic's claimed trade dress is functional because its advertising touts the utilitarian advantages of the design, the particular design results from a comparatively simple or inexpensive method of manufacture and the design yields a utilitarian advantage. | *Talking Rain Bev. Co. Inc. v. S. Beach Bev. Co.*, 349 F.3d 601, 603 (9th Cir. 2003). |
| 66. | Alternative designs are available, but "the existence of alternative designs cannot negate a trademark's functionality." | *Id.* See also *Traffix*, 532 U.S. at 33 (discounting the alternative-design factor). |
| 67. | The Lanham Act has no explicit statute of limitations, but courts borrow the period from analogous state laws, here, four years. | *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 997 n.11 (9th Cir. 2006). |
| 68. | Mosaic's seven-year delay from Ridge's 2013 introduction until Mosaic sued in 2020 is presumed laches. | *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 836–37 (9th Cir. 2002). |
| 69. | Mosaic's obligation to police its trade dress required it to determine if any other companies sold or advertised "infringing" wallets. It had "ample opportunity to discover defendant's activities before defendant developed a substantial business." | *E-Sys., Inc. v. Monitek*, Inc., 720 F.2d 604, 607 (9th Cir. 1983). |
| 70. | Laches bars claims for past damages and injunctive relief. | *Jarrow,* 304 F.3d at 840. |
| 71. | Mosaic's asserted trade dress is functional and not protected. | |

| | Conclusion | Basis |
|---|---|---|
| 72. | Mosaic's trade dress is not protected because Mosaic cannot establish secondary meaning. | |
| 73. | Mosaic is guilty of laches, which prevents it from enforcing its asserted trade dress. | |

March 19, 2021

/s/ *Jonathan Pearce*
Jonathan Pearce
SoCal IP Law Group LLP

Attorneys for Defendant and Counter-claimant The Ridge Wallet LLC

Statement of Uncontroverted Facts and Conclusions of Law

16

Mosaic Brands, Inc. v. The Ridge Wallet LLC
2:20-cv-04556-AB-JC